𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

SECURITY LIFE INSURANCE CO. OF AMERICA V. DILLARD.

March 11, 1915.

1. LIFE INSURANCE — *Suicide Complete Defense — Public Policy.*— There can be no recovery on a life insurance policy where the assured, while sane, committed suicide whether the policy be for the benefit of his family or his estate, and whether suicide was or was not in contemplation of the parties as a risk covered by the policy. Recovery is refused from reasons of public policy.

2. LIFE INSURANCE — *Suicide as Defense — Failure to Mention in Grounds of Defense Immaterial.*—The fact that suicide of the insured is not mentioned in defendant's statement of its grounds of defense is immaterial. Considerations of public policy forbid recovery. These considerations have to do, not with the interests of the parties litigant, but with the public weal, and overreach all mere formal rules of procedure. They cannot be waived by the litigants, either intentionally or unintentionally, but will be enforced by the courts in the interest of public justice.

Error to a judgment of the Circuit Court of the city of Lynchburg in a proceeding by motion on a life insurance policy. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Coleman, Easley & Coleman, Caskie & Caskie* and *F. W. Bull,* for the plaintiff in error.

*A. E. Strode* and *Harrison & Long,* for the defendant in error.

51

Kelly, J., delivered the opinion of the court.

Mrs. Gertrude Dillard brought suit against the Security Life Insurance Company of America in the Circuit Court of the city of Lynchburg, upon an insurance policy issued on the life of her husband, and recovered a judgment which is now before us for review.

The proceeding was by motion, and the only pleading on the part of the defendant was a statement of its grounds of defense, which will be hereinafter briefly noticed.

A number of questions are presented by the record, all of which were argued orally and in the briefs, but in our view of the case the controlling question arises out of the fact that the insured committed suicide.

It seems to be conceded, and from the record it is clear, that the insured while sane took his own life on the night of the very last day on which, without a further payment of premium, his policy could, in the most liberal interpretation of its terms, have been considered in force.

At the conclusion of the evidence the defendant requested a number of instructions, including the following: "The court further instructs the jury, that even if the policy on which this action is founded had not lapsed at the time of the death of the insured but was then in force, nevertheless, if the jury believe from the evidence that the death of the insured was the result of suicide or self-destruction, they must find for the defendant."

The trial court refused to give this instruction, and its refusal is the basis of one of the defendant's exceptions.

We are aware that the question thus arising is one upon which the authorities are not in unison, but we are of opinion that upon the soundest considerations of public policy there ought not to be, and under the principles and authorities already adopted and endorsed by this court

there cannot be, any recovery upon the case as made out in the record before us.

In *Plunkett* v. *Supreme Conclave*, 105 Va. 648, 55 S. E. 11, the president of the court, delivering the opinion, said:

"The case presented to us upon the pleadings is that of a sane man who takes his own life. In other words, as was said in *Burt* v. *Union Cent. L. Ins. Co.*, 187 U. S. 362, 23 Sup. Ct. 139, 47 L. Ed. 216, do insurance policies insure against crime? Is that a risk which enters into and becomes a part of the contract?

"In *Amicable Soc.* v. *Bolland*, 4 Bligh N. R. 194, decided by the House of Lords, the Lord Chancellor said: 'It appears to me that this resolves itself into a very plain and simple consideration. Suppose that in the policy itself this risk had been insured against; that is, that the party insuring had agreed to pay a sum of money year by year upon condition that in the event of his committing a capital felony, and being tried, convicted, and executed for that felony, his assignees shall receive a certain sum of money—is it possible that such a contract could be sustained? Is it not void upon the plainest principles of public policy?

" 'Would not such a contract (if available) take away one of those restraints operating on the minds of men against the commission of crimes—namely, the interest we have in the welfare and prosperity of our connections? Now, if a policy of that description with such a form of condition inserted in it in express terms, cannot, on grounds of public policy, be sustained, how is it to be contended that in a policy expressed in such terms as the present, and after the events which have happened, that we can sustain such a claim?'

"In *Burt* v. *Union Cent. L. Ins. Co.*, *supra*, it is held, upon grounds of public policy, that a policy of life insurance does not insure against the legal execution of the in-

sured for crime, even though he may in fact have been innocent, and therefore unjustly convicted and executed.

"And in *Ritter* v. *Mutual L. Ins. Co.,* 169 U. S. 139, 18 Sup. Ct. 300, 42 L. Ed. 693, Mr. Justice Harlan, delivering the opinion, said: 'There is another consideration supporting the contention that death intentionally caused by the act of the assured when in sound mind—the policy being silent as to suicide—is not to be deemed to have been within the contemplation of the parties; that is, that a different view would attribute to them a purpose to make a contract that could not be enforced without injury to the public. A contract, the tendency of which is to endanger the public interests, or injuriously affect the public good, or which is subversive of sound morality, ought never to receive the sanction of a court of justice, or be made the foundation of its judgment. If, therefore, a policy—taken out by the person whose life is insured, and in which the sum named is made payable to himself, his executors, administrators, or assigns—expressly provided for the payment of the sum stipulated when or if the assured, in sound mind, took his own life, the contract, even if not prohibited by statute, would be held to be against public policy, in that it tempted or encouraged the assured to commit suicide in order to make provision for those dependent upon him, or to whom he was indebted. Is the case any different in principle if such policy is silent as to suicide, and the event insured against—the death of the assured—is brought about by his wilful, deliberate act when in sound mind?' "

The view approved by the opinion just referred to in the *Plunkett Case,* and in the authorities cited therein, has been reiterated and emphasized by the Supreme Court of the United States in the comparatively recent case of *Northwestern Life Ins. Co.* v. *McCue,* 223 U. S. 246, 32 Sup. Ct. 221, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57. In that case Mr. Justice McKenna, delivering the unanimous opinion

of the court, after reviewing with approval the case of *Burt* v. *Union Cent. L. Ins. Co., supra,* and *Ritter* v. *Mutual L. Ins. Co., supra,* says: "These cases must be accepted as expressing the views of this court as to the public policy which must determine the validity of insurance policies, and which they cannot transcend, even by express declaration, much less be held to transcend by omission or implication"; and further, on page 249 of 223 U. S., on p. 223 of 32 Sup. Ct. (56 L. Ed. 419, 38 L. R. A. [N. S.] 57) : "The question before us and the only question is, What rights did Mc-Cue's estate and children get by his policy? And we are brought back to the simple dispute as to whether the policy covers death by the hand of the law. This court has pronounced on that dispute, and its ruling must prevail in the Federal courts of Virginia, in which State the contract was made. And it is consonant with the ruling in the State courts." The opinion then proceeds to cite the case of *Plunkett* v. *Supreme Conclave,* as showing that the Supreme Court of Appeals of Virginia had expressly approved the consideration of public policy expressed in the *Burt Case* and the *Ritter Case* and other cases of that character.

There are authorities holding that when the policy is payable, not to the estate of the insured, but to his wife or other expressly designated beneficiary, the rule announced in the *Ritter Case* and others of like kind does not apply; but the principle of this distinction is rejected, and we think properly so, in the *McCue Case* in the following language: "One other contention of respondents remains to be noticed. It is contended that if the McCue estate cannot recover, the innocent parties, his children, will be admitted as claimants. To this contention we repeat what we have said above, the policy is the measure of the rights of everybody under it, and as it does not cover death by the law there cannot be recovery either by McCue's estate or by his children."

It is contended by the defendant that the original policy, properly construed, as well as the terms of a certain application for reinstatement made less than a year before the death of the insured, contained stipulations against self-destruction which defeat the recovery. The plaintiff, on the other hand, denies that she was bound by the application for reinstatement, and contends that the original policy, though containing a provision against self-destruction, limited that provision to one year from the issuance of the policy, and claims therefore that the provision against self-destruction had no other effect than to show that suicide was one of the risks contemplated by the parties at the time the policy was issued.

We have not deemed it necessary or pertinent to go into a discussion of these contentions, for the patent reason that under the authorities which we have already cited the result must be the same, whether suicide was or was not in contemplation of, or in any manner dealt with, by the parties as a risk covered by the policy.

Counsel for plaintiff rely upon the case of *Knights of Pythias* v. *Weller*, 93 Va. 605, 25 S. E. 891, as supporting their contention that suicide, when shown to have been in contemplation as a risk, cannot be availed of as a defense. In that case the judgment was reversed and the cause remanded for a new trial upon a specific ground, namely, that the trial court erred in refusing to sustain the defendant's motion to strike out the plaintiff's evidence because there was a variance between the allegations and the proof, and it is manifest from the opinion that the question of public policy was not considered by the court.

In the brief of counsel for the plaintiff it is said, that "in the grounds of defense filed by the defendant in the court below the question of public policy involved in the defense of suicide was not raised, but as there stated this defense was rested upon the alleged agreement of the insured that

self-destruction was not a risk assumed, made in the original application." This is true, but the fact of suicide was proved and the question of public policy was necessarily raised by the instruction hereinbefore set out as well as by the motion to set aside the verdict. Our decision of this case rests entirely upon the considerations of public policy above adverted to and fully discussed in the foregoing authorities. These considerations have to do, not with the interests of the parties litigant, but with the public weal, and they overreach, in a case shown by the record to call for their exercise, all mere formal rules of procedure. They can no more be waived, either intentionally or unintentionally, by stipulations or defects in the pleadings than by provisions or omissions in the contract in litigation. As was said by Mr. Justice Field, in *Oscanyan* v. *W. R. Arms Co.,* 103 U. S. 261, 26 L. Ed. 539, referring to a case in which a recovery was forbidden by morality and public policy, "the objection to a recovery could not be obviated or waived by any system of pleading, or even by the express stipulation of the parties. It was one which the court itself was bound to raise in the interest of the due administration of justice."

If it should be suggested (as, however, it has not been) that the plaintiff relied on the grounds of defense, and, feeling confident that the construction of the policy contended for by defendant could not be upheld, introduced no proof in rebuttal of the evidence of suicide, the answer to any such suggestion is, first, that the proof of suicide in the record, which was not objected to, seems absolutely conclusive; and, second, that this cause will be, as it must be under our practice, remanded for a new trial. At such new trial, if the plaintiff shall be advised to avail herself of one, she will have the opportunity of combatting the claim, so well established by the evidence in the present record, that the insured while sane took his own life.

The policy in this case was issued in 1905.   There are indications in the record that for some time the insured had been having difficulty in meeting the premiums.   The last premium falling due before his death was unpaid, but the evidence shows that he felt assured that he was entitled to a certain number of days of grace.   It was on the night of the last day of grace, as he construed his policy, that he ended his life.   We do not overlook the pathetic and appealing aspect which the case assumes if we indulge the natural presumption that he finally committed the act of self-destruction in order to secure a provision for his family. But the very fact that he probably took this false view of the trusteeship which he held in his own life, and of his duty to his family and to the public, illustrates the importance of establishing a known and settled public policy which will discourage this course of conduct on the part of others who might be similarly disposed.

It follows from what has been said that the circuit court erred in refusing the instruction above set out, and in declining to set aside the verdict of the jury.   The judgment complained of will, therefore, be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*