# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

UNITED SECURITY LIFE INSURANCE AND TRUST COMPANY OF
PENN., ETC. v. JOHN W. MASSEY AND RUBY O. PROCTOR,
ADMINISTRATORS OF CHARLES O. PROCTOR, DECEASED,
ET ALS.

June 16, 1932.

Present, Holt, Epes, Hudgins, Gregory and Browning, JJ.

REHEARD JANUARY 12, 1933.

The opinion states the case.

*Lett, Murray & Ford,* for the appellant.

*J. Winston Read, J. Winston Read, Jr.,* and *John W. Massey,* for the appellees.

BROWNING, J., delivered the opinion of the court.

On the 24th day of October, 1927, Charles O. Proctor made application to the United Security Life Insurance and Trust Company of Pennsylvania, appellant, for a fifteen year endowment life insurance contract, and on the 10th day of November, 1927, pursuant thereto, the company entered into an insurance contract with him, which was, in form, rather unusual and unique. It was, however, its accustomed method of business with its insured. The face value of the policy or contract was $5,000.00, which amount was at once advanced to Proctor, and which he was to repay to the company in monthly payments of $51.75 for fifteen years, if he should live that long, otherwise, only so long as he lived. To secure the monthly payments Proctor executed a bond in the penalty of $10,000.00 and a deed of trust on his real estate in the city of Newport News. The contract of insurance provided that if Proctor died within the fifteen year period, its terms having been kept and performed by him, the company would release the deed of trust and return the bond to the wife of the assured, or anyone claiming under or through them.

In the application for the insurance Proctor stated that he was, at the time, a lawyer and that previously he was a conductor for the Chesapeake and Ohio Railway Company. Embodied in the application was the warrant and agree-

ment, among other things, that if he should, at any time, die "in service on any railway train," without the written consent of the insurance company so to be engaged, any agreement under the application should thereupon become null and void, and that the application should be the basis of the contract and regarded as a part thereof, if and when the same was put into force.

The parts of the application and the contract or policy important for consideration here are as follows:

Part of the application: "I hereby warrant and agree, that I am temperate in my habits, now in good health, and ordinarily enjoy good health, and that in the statements and answers in this application and to the company's medical examiner, no circumstance or information has been withheld touching my past and present state of health and habits of life, with which the United Security Life Insurance and Trust Company of Pennsylvania ought to be made acquainted, and that in case the owner shall sell the premises mortgaged to secure the performance of the agreement between the owner and the said company in event of this application being accepted, or the owner shall change or assign any collateral which may be given to the said company, or if, within two years from the date of the agreement, I shall die by my own hand or act, whether sane or insane, or at any time shall die in consequence of flight in an aeroplane or other vehicle of transportation through the air, or of a duel or of the violation of law, or without the written consent of the company, visit the Torrid Zone, reside or travel in any locality where yellow fever or cholera is prevailing as an epidemic; personally engage in blasting, mining, submarine operations, or in the manufacture, handling or transportation of inflammable or explosive substances, *or in service on any railway train,* or on a steam or sailing vessel, or in a naval or army service in time of war, any agreement under this application shall thereupon become null and void, and that the statements and answers to the printed questions above, together with this declara-

tion, as well as those made to the company's medical examiner are full, complete and true, that they shall constitute the application, and be made the basis of this contract and shall be regarded as a part of the contract if and when put into force, and that the place of contract shall be the city of Philadelphia, State of Pennsylvania." (Italics ours.)

"In witness whereof, the applicant has hereunto subscribed his name. Dated at Newport News the 24th day of October, 1927."

Parts of the contract or policy: "And whereas, the said United Security Life Insurance and Trust Company of Pennsylvania, in consideration and upon the faith of the said application (a copy of which is hereto attached and made a part of this contract of insurance), and also in consideration of the covenants, promises and agreements hereinafter contained, on the part of the said Charles A. Proctor to be done and performed, has agreed to issue such endowment life insurance policy, and to advance the said face value thereof, in the form of the following agreement; now therefore"

\*    \*    \*    \*    \*    \*    \*    \*    \*

"III.   That the statements and declarations made by the said party of the first part in his application for this endowment life insurance policy, a copy of which is hereunto annexed, and on the faith of which this contract is entered into by the said party of the second part, have been and are warranted to be in all respects true, and without the suppression of any fact relating to the health or circumstances of the said party of the first part that may affect the interest of the said party of the second part.

"IV.   That during the aforesaid term of years the said party of the first part shall not, without the written consent of the said party of the second part, visit the Torrid Zone or reside or travel in any locality where yellow fever or cholera is prevailing as an epidemic, nor be personally engaged in blasting, mining, or submarine operations, or in the manufacture, handling or transportation of inflam-

mable or explosive substances, *or in service on any railway train,* or on a steam or sailing vessel, or in naval or army service in time of war. (Italics ours.)

\* \* \* \* \* \* \* \* \*

"VI. That in case any of the statements or declarations made in the above-mentioned application are untrue; or in case of the violation by the said party of the first part of any of the above covenants, promises and agreements on . . . . part to be kept and performed; or in case of the death of the said party of the first part by his own hand or act, whether sane or insane, within two years from the date hereof; or in case of death at any time in consequence of a violation of law, then the above mentioned bond shall at once, at the option of the said party of the second part, become due and payable for the amount shown to be then due by the table on the back of this agreement."

Charles A. Proctor was killed on the 29th day of March, 1929, by being accidentally run over by a Chesapeake and Ohio Railway train, on the railroad yards in the city of Newport News, Virginia, while he was acting as a conductor or brakeman on the train being operated on the yards.

Ruby O. Proctor, widow of the deceased, and one of the appellees, demanded the return of the bond and the cancellation or release of the deed of trust which was refused by the appellant, the insurance company, because the assured had allegedly broken his covenant not to become engaged in railway service and had met his death while engaged in an excepted occupation.

In November, 1929, the appellant instituted a chancery suit against the administrators and heirs at law of the assured for cancellation of the insurance agreement, in which the defenses already referred to were asserted. The defendants, appellees here, filed answers to the original and amended bills and interposed demurrers thereto, and the case was heard upon the issues joined and the court sustained the demurrers and dismissed the bills. Upon this action of the trial court the case is before us.

It is conceded that the sole issue on this appeal and therefore the single question for our determination is the construction of section 4228 of the Code of Virginia, in its relation, if any, to the case. The pertinent part of that statute is as follows: "Nor shall such policy be contestable for any cause after it shall have been in force during the lifetime of the insured for one year from its date, except for non-payment of premiums and except for violation of the conditions of such policy requiring the payment of additional premium in the event of naval or military service in time of war, provided, however, that in the event of a misstatement of age, the amount to be paid by the insurer shall be the amount of insurance which the premiums paid would have purchased at the true age of the insured."

The insurance company, appellant, contends that the action taken by it is not a contest of the policy but is really an insistence upon its terms; that the action of the trial court amounted to an abrogation of the express provisions of the contract of insurance because the death of the assured was occasioned by a hazard or risk which was not covered by the policy but which was explicitly excepted therefrom.

It is the contention of the appellees that the statute is applicable to this case and that its terms preclude the right of the insurance company to invoke the provisions of the policy in its behalf, for any cause, after the death of the assured, save for such cause or causes as are embraced in the exceptions stated in the statute.

It will be observed that the application of Proctor for the insurance is made a part of the contract of insurance by reference thereto and by express stipulations to such effect appearing in both instruments.

"An application is a part of the contract of insurance, and is to be read and construed in connection with the policy and other papers, if any, constituting the contract, where it and the policy and other papers are executed simultaneously as parts of one transaction, or where an

intent to make the application a part of the policy appears, as where the policy refers to the application and expressly makes it a part of the policy." 32 Corpus Juris, page 1160, section 273.

By reference to that portion of the application in question, heretofore quoted, it will be noted that Charles A. Proctor contracted with the insurance company in the following language: "I hereby warrant and agree, * * * that if, I shall, * * * without the written consent of the company, * * * personally engage * * * *in service on any railway train* * * *, any agreement under this application *shall thereupon become null and void,* and that the statements and answers to the printed questions above, together with this declaration, * * * are full, complete and true, that they shall constitute the application, and be made the basis of this contract and shall be regarded as a part of the contract if and when put into force, * * *."

In the preamble of the policy, also quoted above, is the following: "And whereas, the said United Security Life Insurance and Trust Company of Pennsylvania, in consideration and upon the faith of the said application (a copy of which is hereto attached and made a part of this contract of insurance), and also in consideration of the covenants, promises and agreements hereinafter contained, on the part of the said Charles A. Proctor to be done and performed, has agreed to issue such endowment life insurance policy, and to advance the said face value thereof, in the form of the following agreement; etc."

And clause IV of the policy again provides that the assured shall not be engaged *in service on any railway train* without the written consent of the insurance company. Thus the assured warranted and agreed that upon his failure to observe and keep the terms of the contract of insurance, in the respect mentioned as well as others, the same should thereupon become null and void.

In respect to contracts of this nature the District of Columbia Court of Appeals said in the case of *Dumas* v.

*Northwestern National Ins. Co.*, 12 App. D. C. 245, 40 L.
R. A. 358, 361: "Courts have sometimes been too astute
in their search for reasons to maintain the liability of in-
surance companies in the face of conditions limiting such
liability. And yet a contract of insurance in this regard
is no different from other contracts; and the function of the
courts is to construe them, not to make them. In the ab-
sence of statutory provisions to the contrary, insurance
companies have the same rights as individuals to limit
their liability, and impose whatever conditions they please
upon their obligations not inconsistent with public policy;
and the courts have no right to add anything to their con-
tracts, or take anything from them. If those contracts con-
tain harsh and onerous conditions, which perhaps a court
of equity might not enforce, if called on so to do, yet there
is no compulsion, either legal or moral, on parties to deal
with them upon the basis of such conditions. And certainly
it would be a novel contention for parties to seek to en-
force liability under such contracts, in a court of common
law, and at the same time to repudiate the express condi-
tions upon which such liability is made to depend." In the
case referred to the issue involved the violation, by the
owner of the property insured, of an unconditional owner-
ship clause in the policy. Recovery was denied the plain-
tiff by the trial court and its judgment was sustained by
the Court of Appeals. The circumstances of the case war-
ranted the court in referring to the conditions as harsh
and onerous. The fact that the case was one of fire in-
surance does not, we think, impair the force of the prin-
ciples enunciated as applicable to the case before us.

In the case in judgment the insurer and the in-
sured, undoubtedly, had the right to contract as they did, in
the absence of any statutory provision to the contrary, pro-
vided their obligations were consistent with public policy.
With these inhibitions the insurance company had the right
to limit its liability. The terms of the policy amounted in
plain and unambiguous terms to those contemplating the

protection of insurance that the issuing company would not assume the risks incident to the hazardous occupation of service on railroad trains.

The contract of insurance was valid and binding upon the parties thereto and must be enforced unless to do so would be in contravention of the provisions of the statute invoked by the appellees.

■ "An insurer of life may, of course, make such exceptions from the risk assumed as it sees fit. It may provide that there shall be no liability on the part of the insurer if the insured die within a year from some cause or disease excepted from the general provisions of the contract of insurance." 14 R. C. L., page 1225, section 405. *Redmen's Fraternal Acc. Ass'n* v. *Rippey*, 181 Ind. 454, 103 N. E. 345, 104 N. E. 641, 50 L. R. A. (N. S.) 1006.

In the case of *Wright* v. *Phil. Life Ins. Co.* (D. C.) 25 Fed. (2d) 514, 515, the policy provided that it should be incontestable, except for non-payment of premiums, after two years from its date, and it also carried the provision that self-destruction while sane or insane, within two years of its date was a risk not assumed by the company under the policy. The insured came to his death by his own hand within the two years and action was instituted on the policy after the expiration of the two years. The incontestable clause was in issue as was also the defense of the non-assumption of the risk by the terms of the policy, and the court said: "The contract provision, expressly excluding the assumption of risk of suicide for two years, is entirely distinct from the incontestable clause, is consistent with it, and the one in no way contradicts the other. The insurance company in this case is not denying in any way the validity of the contract, and therefore is not contesting the policy. Indeed, it stands upon the contract, affirms its validity, and says that, by the terms of the contract itself, the risk was not assumed. Inasmuch as the risk is a risk not assumed by the contract in any event, the incontestable clause has no application, and the defense that the suicide occurred

within two years from the date of the policy could be interposed at any time to an action brought thereon.

"The language used in the earlier cases, construing the incontestable clause where the defense was based on fraud, would indicate that the same result would follow where the defense was based on a clause excluding suicide as a risk. But the later cases draw the proper distinction between the two clauses, and all hold that the incontestable clause has no application when the defense is based on a clause which in express terms excludes the risk. See *Mack* v. *Connecticut Gen. Life Ins. Co.* (C. C. A. 8th) 12 F. (2d) 416, 418; *Hearin* v. *Standard Life Ins. Co.* (D. C. Ark.) 8 F. (2d) 202; *Scarborough* v. *Am. Nat. Ins. Co.*, 171 N. C. 353, 88 S. E. 482, L. R. A. 1918A, 896, Ann. Cas. 1917D, 1181; *Childress* v. *Fraternal Union*, 113 Tenn. 252, 82 S. W. 832, 3 Ann. Cas. 236; *Howard* v. *Mo. State Life Ins. Co.* (Tex. Civ. App.) 289 S. W. 114; *Scales* v. *Jefferson Standard Life Ins. Co.*, 155 Tenn. 412, 295 S. W. 58 [55 A. L. R. 537]; *Myers* v. *Liberty Life Ins. Co.*, 124 Kan. 191, 257 P. 933 [55 A. L. R. 542]; *Woodbery* v. *N. Y. Life Ins. Co.*, 129 Misc. Rep. 365, 221 N. Y. S. 357."

In the case of *Myers* v. *Liberty Life Ins. Co.*, 124 Kan. 191, 257 Pac. 933, 934, 55 A. L. R. 542, 544, involving like issues as the case last referred to, the court said: "The company has no quarrel whatsoever with the policy. Its position is: The policy is valid in all respects, expresses the obligation of the company, and the company desires to fulfill that obligation. What the company contests is an assertion of liability which it says the policy did not create.

"By agreeing not to contest the policy, the company did not agree to stand mute before any unfounded claim which might be predicated on the policy. The application was made a part of the policy, and stated the applicant's age. Amount of premium is fixed according to age, and the policy contained the following provision: 'If the age of the insured was misstated, the amount payable hereunder shall

be such as the premium paid would have purchased at the correct age.'

"Suppose it were admitted the age of the applicant was misstated, the premium based on the stated age would purchase insurance to the amount of $2,500 only and the beneficiary sued for the face amount of the policy, $3,000. In contesting liability for more than $2,500, the company would be insisting on the contract, not contesting it, and it would be unfair to other policy holders paying the proper rate, as well as unfair to the company, not to enforce the policy according to its plain terms. The policy contained provisions relating to loans made to the insured. One of them was that any indebtedness to the company secured by the policy should be deducted in making settlement of benefit. Suppose the beneficiary should sue for the face amount of the policy, it should be admitted an unpaid loan was made to the assured on security of the policy, and the company should resist payment of more than the difference between the amount of the loan and the face amount of the policy. It would be idle to contend the company was contesting the policy. Whatever grounds may exist or may have existed for rescission, cancellation, modification, or other attack on the policy, after the expiration of one year from date of issue the policy stood as the indisputable contract, unalterably determined the liability of the company, and the obligation of the contract expressed by the policy must be fulfilled. But to say this determines nothing with respect to what the terms of the contract are which must be fulfilled. Both plaintiff and the company insist that the policy be enforced according to its terms, and the difference between them is a difference respecting interpretation."

The Supreme Court of New Mexico, in the case of *Stean* v. *Occidental Life Insurance Company*, 24 N. M. 346, 171 Pac. 786, 787, is elucidative of the same principles. "It must be clear that every resistance by the insurer against the demand of the beneficiary is in one sense a contest, but it is not a contest of the policy; that is. not a contest against

the terms of the policy, but a contest for or in favor of the terms of the policy. In other words, there are two classes of contests—one to enforce the policy, the other to destroy it. Undoubtedly the term 'incontestable' as used in a life insurance policy means a contest the purpose of which is to destroy the validity of the policy, and not a contest the purpose of which is to demand its enforcement. Here, the appellant and the appellee are demanding exactly the same thing, namely; the enforcement of the terms of the policy. The dispute is as to those terms, and seeking the construction by the court of the terms of the policy and the application of the terms when ascertained is not a contest of the policy."

In the case of *Scarborough* v. *Amer. Nat. Ins. Co.*, 171 N. C. 353, 88 S. E. 482, 483, L. R. A. 1918A, 896, Ann. Cas. 1917D, 1181, the following was said: "The incontestable clause in this policy does not prevent the defendant from setting up the defense interposed in this action. By the use of the term 'incontestable' the parties must necessarily mean that the provisions of the policy will not be contested, and *not that the insurance company agrees to waive the right to defend itself against a risk which it never contracted to assume.* In *Collins* v. *Metropolitan Life Ins. Co.*, 27 Pa. Super. Ct. 356, the court, in a case precisely like the one at bar, in construing the incontestable clause used the following language: 'By its terms it is not the claim presented by the assured, irrespective of the cause of death, which is made incontestable; it is merely the validity of the policy, as an obligation binding upon the company.' " (Italics ours.)

In *Metropolitan Life Ins. Co.* v. *Conway, Superintendent of Insurance,* 252 N. Y. 449, 169 N. E. 642, the following was said: "Cardozo, C. J. Metropolitan Life Insurance Company, the petitioner, applied to the superintendent of insurance, the predecessor of the present appellant, for his approval of a rider to be attached to its policies. The rider submitted was in the following form: 'Death as a result

of service, travel or flight in any species of air craft, except as a fare-paying passenger, is a risk not assumed under this policy; but, if the insured shall die as a result, directly or indirectly, of such service, travel or flight, the company will pay to the beneficiary the reserve on this policy.' The superintendent of insurance refused his approval upon the ground that the proposed rider in his judgment was inconsistent with insurance law, section 101, subdivision 2 (Consol. Laws, chapter 28), which reads into every policy a provision that it shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its date of issue except for non-payment of premiums and except for violation of the conditions of the policy relating to military or naval service in time of war.' In certiorari proceedings to review this refusal, the appellate division [*Metropolitan Life Ins. Co.* v. *Beha,* 226 App. Div. 408, 235 N. Y. S. 501] found the conflict between rider and statute to be unreal and reversed the determination.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"(2)　We agree with the Appellate Division in its holding that rider and statute in this instance are consistent and harmonious. The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken. Like questions have arisen in other jurisdictions and in other courts of this State. There has been general concurrence with reference to the answer. *Sanders* v. *Jefferson Standard Life Ins. Co.* (C. C. A.) 10 F. (2d) 143; *Flannagan* v. *Provident Life & Accident Ins. Co.* (C. C. A.) 22 F. (2d) 136; *Wright* v. *Philadelphia Life Ins. Co. of Philadelphia, Pa.* (D. C.) 25 F. (2d) 514; *Scarborough* v. *American Nat. Ins.*

*Co.,* 171 N. C. 353, 88 S. E. 482, L. R. A. 1918A, 896, Ann. Cas. 1917D, 1181; *Myers* v. *Liberty Life Ins. Co.,* 124 Kan. 191, 257 P. 933, 55 A. L. R. 542; *Childress* v. *Fraternal Union of America,* 113 Tenn. 252, 82 S. W. 832, 3 Ann. Cas. 236; *Brady* v. *Prudential Ins. Co.,* 168 Pa. 645, 32 A. 102; *Illinois Bankers' Life Ass'n* v. *Byassee,* 169 Ark. 230, 275 S. W. 519, 41 A. L. R. 379; *Woodbery* v. *New York Life Ins. Co.,* 129 Misc. Rep. 365, 221 N. Y. S. 357; *Id.,* 223 App. Div. 272, 227 N. Y. S. 699."

It is said by some of the text-writers and annotators that there is a conflict of authority upon the principles enunciated in the cases cited, and this is true, but we think that the weight of reason, right and logic is with the contention that there is no inconsistency between the Virginia incontestable statutory provision and the excepted risk provision in the policy in the case in judgment. The incontestable provision "is not a mandate as to coverage, a definition of the hazards to be borne by the insurer."

The policy in question limited its coverage by excepting from its operation and effect the assured, if he should engage in service on a railroad train. The engagement in such service *ipso facto* put him outside the folds of its protection.

Charles A. Proctor violated his warranty by engaging in such service and thereby lost his life. He was a voluntary stipulator to refrain from doing that which would at once deprive him of insurance security, in the absence of something done or left undone by the company which would parry this effect. As to this latter we cannot say on the issue developed by the demurrer.

The hazards of railway service were never assumed by the company because they were expressly excepted.

Life insurance is one of the great businesses of the world. Its use is universal and its existence in any particular instance is effectible by contractual relations. To say that by an incontestable statutory provision, such as is found in the Virginia Code, section 4228, the legislature meant to

stifle and suppress the free and lawful employment and exercise of such relations, would be to go further than, we think, the courts should go by warrant of law or justification of reason. Of course, the statutory provision has a very important significance which has been expressed by judicial determination. The validity of the contract as such, the truthfulness of the answers to the questions propounded to the applicant, and such like things cannot be questioned by the insurer as a defense against the policy, after the expiration of what some of the courts have termed "a short statute of limitations."

Counsel for the appellees urge as sound that the effect of this language in clause VI of the policy (viz: "Or in case of death at any time in consequence of a violation of law, then the above-mentioned bond shall at once, at the option of the said party of the second part, become due and payable for the amount shown to be then due by the table on the back of this agreement") was simply to give the insurance company the option to declare the policy void and that this is in conflict with the provision in the application, already referred to and discussed, and should be taken to override it, and since the company did not make such election, the bond remains in full force. We are not impressed with the force of this position. The provision, we think, is in the nature of a penalty providing a means for the immediate collection of the bond.

We think the contention that the non-delivery of the application, with the policy, to the assured, precludes the insurer from relying upon the application as a part of the contract is without merit. The assured executed the application. Each instrument, by reference and adoption, connects the one with the other by express terms.

We hold that the action taken by the appellant is not a contest of the policy, in the meaning of the statute; that the risk taken by Charles A. Proctor, in engaging in the railroad service which resulted in his death, was without the coverage of the policy; that the company did not insure

his life against such hazard; and that the trial court erred in sustaining the demurrer. Its judgment is overruled, and the case is remanded, to be further proceeded with, not in conflict with this opinion.

*Reversed and remanded.*

### ON REHEARING.

### Richmond, January 12, 1933.

HOLT, J., delivered the opinion of the court.

Our original opinion is reported in 164 S. E. 529. The facts are there stated, and so a restatement is unnecessary. ■ It is perfectly plain that an insurance company is not liable for a loss not covered by its policy. To use an extreme illustration, if one were to die after the expiration of a term policy there would be no liability, and a company which undertook to defeat an attempt to saddle upon it a loss would not be contesting it. To use another illustration, if it were to declare that death due to an accident in an airplane was not covered, there could be no liability for such a loss, and a denial of liability would not constitute a contest. But it is also plain that if liability were denied because of some condition subsequent broken, that would be a contest within the purview of Code, section 4228, as amended by Acts 1926, c. 205. *Whitfield* v. *Aetna Life Ins. Co.*, 205 U. S. 489, 501, 27 S. Ct. 578, 51 L. Ed. 895, 898.

We shall not undertake to discuss the two applications for insurance appearing in the record, but will adopt that of October 24, 1927, here relied upon by the company. It provides that if the insured shall personally engage "in service on any railway train * * * any agreement under this application shall become null and void and that the statements and answers to the printed questions above, together with this declaration as well as those made to the company's medical examiner, are full, complete and true, and that they shall constitute the application and shall be made the basis

of this contract and shall be regarded as a part of the contract."

This rider was proposed to New York life insurance policies: "Death as a result of service, travel or flight in any species of air craft, except as a farepaying passenger, is a risk not assumed under this policy; but, if the insured shall die as a result, directly or indirectly, of such service, travel or flight, the company will pay to the beneficiary the reserve on this policy."

It will be observed that it deals with "a risk not assumed." Cardozo, C. J., in *Metropolitan Life Ins. Co.* v. *Conway, Superintendent of Insurance,* 252 N. Y. 449, 169 N. E. 642, held this to be a valid rider provision, and said: "The provision (statutory) that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken."

The New York rider would not have been sustained had it gone beyond coverage. Ours nowhere undertakes to define risks not assumed, and has nothing at all to do with coverage. It does apply to conditions broken.

Judge Cardozo, in commenting upon *Northwestern Mutual Life Ins. Co.* v. *Johnson,* 254 U. S. 96, 41 S. Ct. 47, 65 L. Ed. 155, made this observation: "The clause there in question was not a limitation as to coverage. It was a provision for a forfeiture. In case of the suicide of the insured, whether sane or insane, the policy was to be 'void.' "

It was upon its face incontestable after one year, coupled with the further condition that it was to be void should the insured "die by his own hand." The insured committed suicide, and it was held that there could be a recovery because of the incontestable clause, and not because there was no coverage. Continuing, Cardozo, C. J., said: "* * *

with such a clause the death of the insured, coupled with the payment of the premiums, will sustain a recovery in the face of a forfeiting condition. It is quite another thing to say that the same facts will prevail against a refusal to assume the risk."

This sound distinction appears in many cases.

Had the policy declared that "death from suicide is a risk not assumed," a different conclusion would doubtless have been reached. Our application puts death from suicide and death from service on any railway train upon a common footing.

In *Head* v. *New York Life Ins. Co.* (C. C. A.) 43 Fed. (2d) 517, 519, the court said: "The 'incontestable' provision in section 6731, *supra,* is not a mandate as to coverage nor a definition of the hazards to be borne by the insurer. It provides rather that, after the expiration of the two year period, the policy, within the limits of the coverage, shall stand unaffected by any defense that it was invalid in its inception or thereafter became invalid by reason of a condition broken. The exceptions to the 'incontestable' provision of the statute do not militate against this construction. Here, again, the distinction must be made between limitation on the coverage and limitation on a defense of invalidity. A policy may provide that default in the payment or the entry of the insured into the military or naval service shall forfeit the insurance. Such a condition is more than a limitation of the risk."

In *Bowman* v. *Surety Fund Life Ins. Co.,* 149 Minn. 118, 182 N. W. 991, 992, the policy contains this provision: "This policy shall be void if the insured shall engage in army or navy service in time of war without the written consent of the company, or shall become intemperate in the use of intoxicating liquors, chloral, cocaine or opium to the extent to impair the health of the insured." The insured, without such written permission, went into military service and was killed in battle. That court held that it was dealing with a condition broken, and distinguished it from *Rud-*

*dock* v. *Detroit Life Ins. Co.,* 209 Mich. 638, 177 N. W. 242, 243, which dealt with this provision: "* * * Military or naval service in time of war is not a risk assumed under any policy hereunder applied for * * *." In the one case there never was coverage; in the other there was complete coverage in the beginning. The defense was a condition subsequent broken. Forfeitures defeat an existing right, but a right which never existed can never be forfeited, and this is the distinction between those policies which declare that certain risks are not assumed and those which declare that they may be defeated by some subsequent happening.

We have seen in *Northwestern Life Ins. Co.* v. *Johnson, supra,* that a condition subsequent broken cannot be availed of where a policy is incontestable upon its face, and for a like reason it is unavailable when made so by statute. This conclusion finds support in the language of the statute itself.

Service on railway trains and service in the army are put upon a common footing, with this exception: Insurance companies are given the power to exact additional premiums in the event of military service, thus carrying with it the inevitable suggestion that in such service this is the only limitation which may be imposed. Of course, no insurance company can be required to insure soldiers, and a stipulation to the effect that it does not would deal with coverage, and to it the statute would have no application.

Here the policy is a flat contract of insurance. In its inception no exceptions appear upon its face, and if defeated it must be, not because of original reservations, but because of some covenant broken. The latter possibility is one which the statute was designed to meet.

The company cannot prevail for another reason. In its amended bill is this statement: "Your complainant further shows to the court that the said Charles A. Proctor was actually engaged in service of The Chesapeake and Ohio Railway Company in the operation of its trains at Newport News, Virginia, at the time he made application

for said insurance policy, at the time he took said medical examination and at the time he executed the said agreement; and further that the said Charles A. Proctor departed this life on or about the 29th day of March, 1929, while he was in the pursuit of his duties as a conductor or brakeman on the railroad yards of the Chesapeake and Ohio Railway Company in Newport News, Virginia, when the railroad train on which he was riding was accidentally run over him."

The insured in his application said that he was a lawyer. This amended bill charges that he was at that time in the forbidden railway service as a railroad conductor or brakeman. We are dealing with a demurrer and must accept this charge as true. He warrants his answer as to occupation and makes it part of the policy. It was material to the risk, untrue, and makes the contract voidable from its inception. Code, section 4220. The company had one year in which to ascertain the facts and to act thereon. Having failed to act it must forever after hold its peace. The statute does not deal with rights of litigants, but is one of limitation, wisely conceived and to be liberally construed. *Harrison* v. *Prov. Relief Ass'n,* 141 Va. 659, 126 S. E. 696, 40 A. L. R. 616. If it did not apply to false warranties and to conditions broken, it would be of little value. We are unwilling to fritter it away.

Upon further consideration we are of opinion to reverse our conclusions first reached. The decree of the trial court, sustaining the demurrer to the original and amended bill, was without error and is affirmed.

*Affirmed.*