## NEW ENGLAND MUT. LIFE INS. CO. v. MITCHELL.

### No. 4739.

Circuit Court of Appeals, Fourth Circuit.

March 10, 1941.

---

416

John L. Walker, of Roanoke, Va. (Leonard G. Muse and Woods, Chitwood, Coxe, Rogers & Muse, all of Roanoke, Va., on the brief), for appellant.

W. R. Broaddus, Jr., of Martinsville, Va., and William M. Mitchell, of Bassett, Va. (Carter & Williams and Jno. W. Carter, Jr., all of Danville, Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment rendered on the pleadings in an action to recover on two policies of life insurance aggregating $15,000. In the answer it was alleged that the insured committed suicide more than one year but less than two years from the issuance of the policies, which contained the following provisions:

"If the insured, whether sane or insane, shall die by his or her own hand or act within two years from the date hereof this policy shall be void and shall have no value; but in such event the company will return any premium paid.

"This policy shall be incontestable after it has been in force for a period of one year from its date of issue, except for failure to pay premiums, and except as to any provision contained in any supplemental agreement annexed hereto relating to additional benefits specifically granted in event of total and permanent disability or of death by accident."

The judge below, being of opinion that the suicide clause did not comply with the requirement of the Virginia statute, and that suicide was no defense for that reason, entered judgment for plaintiff; and the defendant company has appealed.

The statute determinative of the rights of the parties is sec. 4228 of the Virginia Code of 1936, which is as follows: "In any action, motion or other proceeding on a policy of life insurance hereafter issued to any person residing in this State at the time of issuance thereof, or which is otherwise subject to the laws of this State, to recover for the death of such person, it shall be no defense that the insured committed suicide, or was put to death by execution under the law; provided, however, that if there shall be an express provision in the body of such policy limiting the liability of the insurer in the event that the insured shall, within two years from the date thereof, die by his own act (whether sane or insane), such provision shall be valid but the insurer shall be obligated to return, or pay, at the least, the amount of the premiums paid on account of such policy. Nor shall such policy be contestable for any cause after it shall have been in force during the lifetime of the insured for one year from its date, except for non-payment of premiums and except for violation of the conditions of such policy requiring the payment of additional premium in the event of naval or military service in time of war; provided, however, that in the event of a misstatement of age, the amount to be paid by the insurer shall be the amount of insurance which the premium paid would have purchased at the true age of the insured."

In connection with this statute, it should be remembered that under the common law of Virginia it had been decided that there could be no recovery on a life insurance policy in case of suicide. Security Life Ins. Co. of America v. Dillard 117 Va. 401, 84 S.E. 656, Ann.Cas.1917D, 1187. The statute quoted was, therefore, in derogation of this common-law rule; and the proviso relating to suicide, the purpose of which was to preserve the com-

mon-law rule for the limited period of two years .where provision to that effect is contained in the policy, should be given a liberal and not a strained construction.

The question in the case, then, is whether the suicide clause quoted above is a provision "limiting the liability of the insurer in the event that the insured shall, within two years from the date thereof, die by his own act", within the meaning of the proviso of the statute. If it is such a provision, the defendant is clearly not liable under the policies, notwithstanding the incontestability clause; for as the statute provides for a two-year suicide clause and requires a one-year incontestability clause, it could not have been intended that the latter should cut short the period provided by the former. If it is not such a provision, the statute precludes the defense of suicide, irrespective of the provisions of the incontestability clause. This being true, it is unnecessary to consider the cases dealing with the effect of the incontestability clause on defense under the suicide clause. See notes 55 A.L.R. 549, 67 A.L.R. 1364. The law of Virginia is, of course, controlling; and, as the question is one of the interpretation and application of a state statute, this would be true irrespective of the overruling of Swift v. Tyson 16 Pet. 1, 10 L.Ed. 865, by Erie Railroad Co. v. Tompkins 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

It is perfectly clear, we think, that any language showing that liability of the insurer under the policy shall not extend to death from suicide and that, in such event, the premiums paid on the policy shall be returned, is a sufficient compliance with the requirement of the statute.

The purpose of language is to convey thought; and the thought that liability is so limited that, in the event of suicide, the face of the policy will not be paid but the premiums will be returned is quite as well expressed by language to the effect that, in case of suicide, the policy shall be void and the premiums shall be returned as this same thought would be expressed by a provision that suicide is not a risk covered by the policy or that liability under the policy shall not extend to suicide. The idea that there is any magic in a particular phrase or that a set form of words must be used to embody such a contractual provision as this, is one which has no place in modern legal thinking. A policy of insurance is the contract of the parties in which the promises of the company are definitely set forth; and a provision to the effect that, in case of suicide, a life policy shall be void, is as definite a statement as could possibly be made that the coverage of the policy does not extend to suicide or, what is the same thing, that the liability of the company is so limited as not to cover suicide.

It is interesting to note that, in the many cases which have arisen involving the question of the effect of the incontestability clause on the suicide clause and in which the point of departure between conflicting lines of authority is whether the suicide clause is to be regarded as a limitation of liability or as a condition providing a ground for contesting liability, no distinction seems to have been drawn with respect to the precise wording of the suicide clause. There are two distinct lines of authority, but in neither line has the question been thought to depend upon the language of the suicide clause.[1] That such a clause

[1] Thus in cases holding that the defense of suicide was precluded by the incontestability clause, the language of the suicide clause was as follows: "Death of the member by his own hand * * * is not a risk assumed * * * but * * * there shall be payable * * * a sum equal to the amount of the assessments paid * * *." Mareck v. Mutual Reserve Fund Life Ass'n, 1895, 62 Minn. 39, 64 N.W. 68, 54 Am.St.Rep. 613. "If a member dies * * * by self-destruction, * * * the certificate * * * shall be null and void." Royal Circle v. Achterrath, 1903, 204 Ill. 549, 68 N.E. 492, 495, 63 L.R.A. 452, 98 Am.St.Rep. 224. "This order will not pay the benefits of members who commit suicide,

* * * but * * * the amount of money contributed * * * shall be returned." Supreme Court of Honor v. Updegraff, 1904, 68 Kan. 474, 75 P. 477, 1 Ann.Cas. 309. " * * * the risk of death will not be covered by the policy provided such death occur by my own act * * * during the period of one year." Mutual Life Ins. Co. v. Lovejoy, 1917, 201 Ala. 337, 78 So. 299, L.R.A.1918D, 860. "If the insured * * * shall die by his own hand, or act, within one year * * * this policy shall be void and shall have no value; but in such event the company will return the premium paid." Yates v. New England Mut. Life Ins. Co., 1928, 117 Neb. 265, 220 N.W. 285, 288. "Self-destruction * * * within one

as the one here involved is definitely a limitation of liability, however, was the holding in Moore v. Bankers' Credit Life Ins. Co. 223 Ala. 373, 136 So. 798. The exact wording of the clause there was that in case of suicide within two years "this policy shall be valid only for an amount equal to the premiums received". The court in holding that there was no conflict between the suicide and incontestability clauses, said: "We rather construe the policy as simply meaning that, if the insured died by his own hand within the two-year period, the beneficiary should receive only the amount represented by the premiums paid, and this regardless of the date of the institution of the suit, for the suicide clause expressly discloses such was the full extent of the risk assumed during that period."

The contention that the suicide clause here is a mere condition subsequent, breach of which may avoid the policy but which does not amount to a limitation of liability, will not bear analysis. The clause relates, not to matters affecting the risk, but to the risk itself. Breach of a condition subsequent avoids the policy so that it no longer covers the risk insured against;

but where a life policy contains a suicide clause, suicide is simply not a risk insured against in the first instance. A life policy promises payment in case of death; and the office of the suicide clause in such a policy is to except death by suicide from that promise. It is clear, therefore, that the suicide clause, whether it provides that the policy shall be void in case of suicide or that suicide is not a risk covered, is necessarily a limitation on coverage. Its effect is to except death by suicide from the promise to pay the amount of the policy in case of death.

We find nothing in the Virginia authorities to the contrary. Plaintiff relies upon a dictum in the case of United Security Life Ins. & Trust Co. v. Massey, 159 Va. 832, 164 S.E. 529, 167 S.E. 248, 250, 85 A.L.R. 306. That case was one involving a promissory warranty against engaging in a forbidden occupation. The holding was that the incontestability clause forbade a contest based upon breach of this condition. While language was used indicating that this would be the proper holding if breach of condition related to the suicide clause, the mind of the court was not directed to that point and no account was

year * * * is a risk not assumed * * * the company will return the premiums actually received." Standard Life Ins. Co. v. Robbs, 1928, 177 Ark. 275, 6 S.W.2d 520. "In case of self-destruction during the first two insurance years, * * * the insurance under this policy shall be a sum equal to the premiums thereon * * *". Fore v. New York Life Ins. Co., 1930, 180 Ark. 536, 22 S.W.2d 401, 67 A.L.R. 1358.

In cases holding that defense under the suicide clause was not affected by the incontestability clause, the wording of the suicide clause was as follows: " * * * in case the insured shall die by his own hand * * * this policy shall become null and void." Starck v. Union Central Life Ins. Co., 1890, 134 Pa. 45, 19 A. 703, 7 L.R.A. 576, 19 Am.St.Rep. 674. " * * * if the insured should die by self-destruction * * * within three years from the date hereof, this policy shall be null and void, and, in case of said avoidance, the reserve value only * * * shall be paid * * *." Insurance Co. v. Fox, 1901, 106 Tenn. 347, 61 S.W. 62, 63, 82 Am.St.Rep. 885. "Suicide * * * within two years * * * is not a risk assumed by the company." Mack v. Connecticut General Life Ins. Co., 8 Cir., 1926, 12 F.2d 416, 417. "In case of death by self-destruction * * *

within one year * * * the liability of the company shall be limited to an amount equal to the premiums paid hereon". Howard v. Missouri State Life Ins. Co., Tex.Civ.App.1927, 289 S.W. 114, 115. "In case of self-destruction * * * within two years * * * the extent of recovery hereunder shall be the premiums paid." Scales v. Jefferson Standard Life Ins. Co., 1927, 155 Tenn. 412, 295 S.W. 58, 55 A.L.R. 537. "If the insured shall within two years * * * die by his * * * own hand, or act, * * * this policy shall be valid only for an amount equal to the premiums received on the policy." Moore v. Bankers' Credit Life Ins. Co., 1931, 223 Ala. 373, 136 So. 798. "If within two years * * * the Insured * * * shall die by his own hand or act, the limit of recovery hereunder shall be the reserve on this Policy." Williamson v. America Ins. Union, 1936, 284 Ill.App. 150, 1 N.E.2d 541, 542. "If within two years * * * the Insured shall * * * die by his own hand, the liability of the Company shall be limited to the amount of the premiums paid hereon." Vance v. Life & Cas. Ins. Co., 1939, 184 Miss. 604, 186 So. 647. "I also warrant and agree that I will not die by my own act * * * during said period of two years." Mutual Life Ins. Co. v. Kelly, 8 Cir., 1902, 114 F. 268, 270.

taken of the limitation of coverage necessarily involved in such a clause. The court apparently assumed, in the language relied on, that suicide merely defeated liability under the policy as upon a condition broken, overlooking the fact that the necessary effect of the suicide clause was to exclude liability in case of suicide. The court did, however, use language clearly indicating that the principle of the case should apply only to cases where there was a denial of liability because of a condition broken, saying: "Forfeitures defeat an existing right, but a right which never existed can never be forfeited, and this is the distinction between those policies which declare that certain risks are not assumed and those which declare that they may be defeated by some subsequent happening." Here the risk of death from suicide was never assumed, for the provision was that the policy should be void in such event and the only liability then existing should be the repayment of premiums. This is very different from the case of a warranty not to engage in a forbidden occupation. There the liability for death attaches upon the issuance of the policy and is defeated by breach of the condition. Here liability for death from suicide within two years is precluded by express provision of the policy itself.

■ In a later case, Darden v. North American Benefit Association, 170 Va. 479, 197 S.E. 413, 416, the point, we think, was directly involved and the holding was in accordance with the view that we have taken. In that case the policy provided that the beneficiary should be entitled to the payment of only one-fifth of the amount otherwise due if the insured died of heart disease having its incipiency within two years from the date of the policy. In holding this to be a limitation of liability not affected by the incontestability clause, the court said: "The facts in the instant case are wholly different from those in the case of United Security Life Insurance & Trust Company v. Massey, supra. There a distinction was made between facts which might have warranted a rescission of the contract and those cases involving risks not covered by the contract. In the instant case there are original reservations and an exemption to a certain extent from the risk assumed. The contract before us neither provides for a forfeiture nor sets up conditions subsequent. The contest here relates to the coverage, and not to the validity of the policy. The defendant is not contesting the policy because of anything occurring in its incipiency. It is relying upon its contract, and as has been aptly said, a reliance upon its contract does not constitute a contest of its validity, but necessarily assumes it." Here, as in that case, the contest "relates to the coverage, and not to the validity of the policy." The defendant is relying upon the contract, and a reliance upon the contract "does not constitute a contest of its validity, but necessarily assumes it". There can be no distinction in law or in reason between a provision to the effect that upon certain conditions one-fifth only of the face of the policy shall be payable and one to the effect that upon certain conditions the promise of the policy to pay the face amount shall be void and the premiums paid shall be returned. In either case, there is a limitation of the liability of the insurer expressed in the face of the policy, not a warranty or condition upon breach of which a liability assumed may be forfeited.

■ In the light of the decision in the Darden case, we do not think that the dictum in the Massey case upon which plaintiff relies has even persuasive value. But we would not feel bound to follow it in any event. We recognize, of course, our duty to ascertain and apply the law of Virginia to the facts of the case; but mere dicta have never been received as conclusive evidence of the law of any state, and clearly they ought not be followed when opposed to what we regard as the sound and reasonable rule arising out of the common law of the state. As said by the Supreme Court of the United States in Carroll v. Carroll, 16 How. 275, 286, 14 L.Ed. 936, a case involving the interpretation of a state statute where the court was bound to ascertain and apply the state law: "If the Court of Appeals had found it necessary to construe a statute of that State in order to decide upon the rights of parties subject to its judicial control, such a decision, deliberately made, might have been taken by this court as a basis on which to rest our judgment. But it must be remembered that we are bound to decide a question of local law, upon which the rights of parties depend, as well as every other question, as we find it ought to be decided. In making the examination preparatory to this finding, this court has followed two rules, one of which belongs to the common law, and the other is a part of our peculiar judicial system. The first is

the maxim of the common law, stare decisis. The second grows out of the thirty-fourth section of the Judiciary Act (1 Stat. at L., 92) [28 U.S.C.A. § 725], which makes the laws of the several States the rules of decision in trials at the common law; and in as much as the States have committed to their respective judiciaries the power to construe and fix the meaning of the statutes passed by their legislatures, this court has taken such constructions as part of the law of the State, and has administered the law as thus construed. But this rule has grown up and been held with constant reference to the other rule, stare decisis; and it is only so far and in such cases as this latter rule can operate, that the other has any effect."

And after stating that the construction put by a state court upon a statute is not a decision to be followed within the stare decisis rule unless this was necessary to the determination of the rights of the parties before the court, the court went on to give the reason for the rule that dicta are without binding authority, as follows: "And therefore this court and other courts organized under the common law, has never held itself bound by any part of an opinion, in any case, which was not needful to the ascertainment of the right or title in question between the parties. In Cohens v. State of Virginia, 6 Wheat. [264] 399 [5 L. Ed. 257] this court was much pressed with some portion of its opinion in the case of Marbury v. Madison [1 Cranch 137, 2 L.Ed. 60]. And Mr. Chief Justice Marshall said, 'It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent; other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.' The cases of [In re City Bank] Ex parte Christy, 3 How. 292 [11 L.Ed. 603], and Peck v. Jenness, 7 [How.] 612 [12 L.Ed. 841], are an illustration of the rule that any opinion given here or elsewhere cannot be relied on as a binding authority, unless the case called for its expression. Its weight of reason must depend on what it contains."

Nothing in recent decisions has in anywise weakened this rule or the sound basis of reason upon which it rests. In ascertaining the applicable law of the state, we are to consider court decisions and other available sources of local law; and we are to apply court decisions in the light of the well-established stare decisis rule and its limitations. Cf. West v. American Tel. & Tel. Co., 61 S.Ct. 179, 85 L.Ed. ——. We are not required, however, to speculate as to how the state court might decide the question before us if it has not already decided it. Nor should we surrender our own judgment as to what the local law is on account of dicta or other chance expressions of the judges of the local courts. The respectful attitude towards the local court, where there has been no decision on the precise question before us, is to consider that question in the light of the common law of the state, with a view of reaching the decision which reason dictates, and with the faith that the local court will reach the same decision when the question comes before it. To base a decision upon dicta, or upon speculation as to what the local court might decide in the light of dicta, would be to depart from our solemn duty in the premises and embark upon a vain and illusory enterprise.

For the reasons stated, the judgment appealed from will be reversed, and the cause will be remanded for further proceedings not inconsistent herewith.

Reversed.