No. 27,547.

EDNA A. MYERS, *Appellee*, v. THE LIBERTY LIFE INSURANCE
COMPANY, *Appellant*.

(257 Pac. 933.)

SYLLABUS BY THE COURT.

LIFE INSURANCE—*Construction of Policy—Effect of Incontestable Clause on
Suicide Provision.* A life insurance company issued a policy on September
10, 1923. in which it agreed to pay to the insured's wife as beneficiary the
sum of $3,000 immediately on receipt of proof of death of the insured, pro-
vided premiums had been paid and the policy was in force. The policy
contained these provisions:

"This policy shall be incontestable after one year from the date of
issue, if premiums have been duly paid.

"In case of suicide of the insured, whether sane or insane, within two
years from the date of this policy, the liability of the company shall be
limited to the amount of the premium actually paid."

The insured committed suicide by hanging on August 27, 1924. The policy
was in force, the premium had been paid, and proof of death was made.
*Held*, the entire policy considered, liability of the company is limited to the
amount of premium actually paid.

Appeal from Republic district court; JOHN C. HOGIN, judge. Opinion filed
July 9, 1927. Reversed.

*Stephen H. Allen, Otis S. Allen* and *George S. Allen,* all of Topeka, for the
appellant.

*Nelson J. Ward,* of Belleville, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the beneficiary in a life in-
surance policy to recover from the company issuing it. The com-
pany contended its liability was limited to the amount of premium
which had been paid. Judgment was rendered for plaintiff for the
face amount of the policy, and defendant appeals.

The policy was dated September 10, 1923, and was delivered to
the insured shortly thereafter and before September 25, 1923. The
policy recited that the company insured the life of Walter E. Myers,
and agreed to pay, at its home office, immediately on receipt of
proof of death of the insured, provided premiums had been paid and
the policy was in force, the sum of $3,000 to his wife, Edna E.
Myers, beneficiary. Privilege was reserved to the insured to change

Insurance, 32 C. J. 1158 n. 38, 40; L. R. A. 1918D 870; 14 R. C. L. 1233. Life
Insurance, 37 C. J. p. 544 n. 2.

beneficiary, and if no beneficiary survived the insured the policy was payable to his executors, administrators, and assigns. These were the initial provisions of the policy. Following them various subjects of contract were dealt with under headings, or words which served for headings, in bold-face capital letters. The first one of the succeeding provisions covered the subject of incontestability:

"(1) THIS POLICY SHALL BE INCONTESTABLE after one year from the date of issue, if premiums have been duly paid."

On the second page of the policy, under the heading "General Provisions," which was as prominent as any other, appeared seven numbered provisions. The fourth read as follows:

"(4) In case of suicide of the insured, whether sane or insane, within two years from the date of this policy, the liability of the company shall be limited to the amount of the premium actually paid."

The case was submitted on an agreed statement of facts and some depositions supplementing the agreed statement. The agreed statement contained the following:

"4. That on the 27th day of August, 1924, the said Walter E. Myers committed suicide by hanging. . . . That on September 22, 1924, proofs of death of said Walter E. Myers were made and delivered to the defendant, showing that the said Walter E. Myers had committed suicide by hanging, . . . That on the 30th day of September, 1924, the defendant tendered to the plaintiff the sum of $120, being the full and actual amount of premiums paid by the said Walter E. Myers on said policy. . . .

"5. This action was instituted on the 11th day of April, 1925, and no other action has been commenced in any court concerning said policy of insurance."

The depositions tended to show the company received information on September 3, 1924, that the insured had committed suicide, which was seven days after the event, and seven days before the policy became incontestable.

Plaintiff contends the company undertook to contest the policy, and was precluded from doing so because contest was not begun within one year from the date the policy was issued. In support of this contention plaintiff cites the case of *Priest v. Kansas City Life Ins. Co.*, 119 Kan. 23, 237 Pac. 938. In the Priest case the company defended on the ground the insured in his application for insurance knowingly made false representations regarding the state of his health and other matters material to the risk. (*Priest v. Life Insurance Co.*, 116 Kan. 421, 227 Pac. 538.) The binding force of the contract pleaded as a basis of liability was challenged because the company was induced to enter into it by fraud of the insured,

and the case was a typical case of contest of the policy. We have no such case here.

The company has no quarrel whatsoever with the policy. Its position is, the policy is valid in all respects, expresses the obligation of the company, and the company desires to fulfil that obligation. What the company contests is an assertion of liability which it says the policy did not create.

By agreeing not to contest the policy, the company did not agree to stand mute before any unfounded claim which might be predicated on the policy. The application was made a part of the policy, and stated the applicant's age. Amount of premium is fixed according to age, and the policy contained the following provision:

"If the age of the insured was misstated, the amount payable hereunder shall be such as the premium paid would have purchased at the correct age."

Suppose it were admitted the age of the applicant was misstated, the premium based on the stated age would purchase insurance to the amount of $2,500 only, and the beneficiary sued for the face amount of the policy, $3,000. In contesting liability for more than $2,500, the company would be insisting on the contract, not contesting it, and it would be unfair to other policyholders paying the proper rate, as well as unfair to the company, not to enforce the policy according to its plain terms. The policy contained provisions relating to loans made to the insured. One of them was that any indebtedness to the company secured by the policy should be deducted in making settlement of benefit. Suppose the beneficiary should sue for the face amount of the policy, it should be admitted an unpaid loan was made to the assured on security of the policy, and the company should resist payment of more than the difference between the amount of the loan and the face amount of the policy. It would be idle to contend the company was contesting the policy. Whatever grounds may exist or may have existed for rescission, cancellation, modification, or other attack on the policy, after expiration of one year from date of issue the policy stood as the indisputable contract, unalterably determined the liability of the company, and the obligation of the contract expressed by the policy must be fulfilled. But to say this determines nothing with respect to what the terms of the contract are which must be fulfilled. Both plaintiff and the company insist that the policy be enforced according to its terms,

and the difference between them is a difference respecting interpretation.

What is the extent of the company's liability on the policy, the insured having committed suicide within two years from date of issue? Plaintiff contends the provision for limited liability in case of suicide renders the policy ambiguous, and it must be interpreted most favorably to the insured. The policy provided for payment of $3,000 immediately on receipt of proof of death of the insured. Suppose that, under the heading "General Provisions," the policy provided the company would pay double the face amount if death resulted from accident occurring within two years from date of issue. Nobody would say such a provision rendered the policy ambiguous with respect to extent of liability, if the contingency occurred, and if in an action to recover on the policy the company should deny double liability on the ground the insured did not die as the result of accident, it could not be urged successfully that the company was contesting the policy. The policy provided that any unpaid balance of the current year's premium would be deducted in any settlement of the policy as a death claim. It is not likely any candid person would contend the provision rendered the policy ambiguous with respect to extent of liability if the assured died owing premium for the current year. The policy further provided that if death occurred as the result of suicide within two years the liability of the company should be limited to amount of premium paid. The policy did not end with the provision for payment of $3,000 on receipt of proof of death. That provision was merely the beginning of the contract. Numerous subjects were to be treated, and various contingencies were to be provided for. The whole contract could not be stated intelligibly without breaking it up into paragraphs, each of which related to a specific subject, and the engagements contained in paragraphs succeeding the first one, or the first two or three, are just as binding as if the order were reversed. To ascertain its meaning the policy must be read through, and each provision must be accorded its reasonable, natural and probable meaning when considered in relation to others pertaining to the same subject, and in relation to the instrument as a whole. The purpose of doing this is not to discover some "curious hidden sense which nothing but a hard case and the ingenuity of a trained and acute mind" might suggest (*Hearin v. Standard Life Ins. Co.,* 8 F. [2d] 202), or to

find some technical basis for sticking in ambiguity when unforced harmonizing will make each stipulation prevail. The purpose is simply to apprehend true meaning. Considering the policy sued on according to this method, it is free from ambiguity, and liability of the company to pay $3,000 on proof of death, created by the first provision, was qualified by other provisions operating under stated conditions. Among those provisions was the one relating to suicide.

Plaintiff contends, however, the incontestable provision of the policy was designed to guarantee payment of benefit free from dispute, except dispute of the fact that premiums had been duly paid.

Perhaps the company aimed at some psychological effect when it arranged the provisions of the policy. Those making the policy attractive to the insured were placed first: Promise to pay $3,000; privilege to change beneficiary; incontestability; freedom from restriction on travel, residence, and occupation; dividends; and use of dividends to shorten premium-payment period, or to mature the policy as an endowment. The policy concluded with the provision relating to premiums. Because the policy must be construed as a whole, the order in which the provisions appear is unimportant, unless it indicates purpose to deceive. Formerly a devise in a will or a grant under a deed could not be cut down by a subsequent qualifying provision. The penchant for finding ambiguity in insurance policies is just as prohibitive of rational interpretation as the old thought-stifling formalism. If the suicide provision had been placed in the position of the incontestable provision, and the incontestable provision had been placed under the heading "General Provisions," their relative importance would not have been affected, and the question would have been, as it is now, What does the instrument mean? There is no basis for an assertion that the arrangement of provisions which was adopted was deceptive, and for the reasons stated the form of the policy is not material.

The suicide provision is clear and explicit. Its plain meaning is that the policy does not become operative as against suicide until two years have elapsed from date of issue, and in the event of suicide at any time within that period, the company's liability is limited to the amount of premium it has received. Insurance is a business affected with a public interest. Viewed from the standpoint of public interest and public policy, the provision is sound in law, morals,

and insurance economy. It was entitled to a place in the contract, was inserted in the contract, and it must not be read out of the contract unless its effect is nullified by some provision of greater potency with which it cannot be reconciled.

What the company was trying to guard against was insurance taken out by a person who intended to resort to suicide as a means of recouping or swelling his estate, or of providing for or enriching some beneficiary or beneficiaries. Experience shows that this is done often enough to warrant declination of the risk. Such being the purpose of the suicide provision, there is no necessary conflict between it and the incontestable provision. In strictness they relate to different subjects. One relates to engaging quality of the contract, and the other to definition of risk. Observing the distinction, at the end of a year the company was bound to the full extent of the risk it assumed, but it was not liable on a risk which it stipulated it would not assume, and the defense that the assured committed suicide no more contested the policy than a defense that he is still alive.

There is a conflict of authority on the subjects which have been discussed. The views which have been expressed are supported by the following decisions: *North American Union v. Trenner*, 138 Ill. App. 586; *Stean v. Occidental Life Ins. Co.*, 24 N. Mex. 346; *Scarborough v. Insurance Co.*, 171 N. C. 353, 355; *Childress v. Fraternal Union of America*, 113 Tenn. 252; *Sanders v. Jefferson Standard Life Ins. Co.*, 4 F. (2d) 555; *Hearin v. Standard Life Ins. Co.*, 8 F. (2d) 202; *Sanders v. Jefferson Standard Life Ins. Co.*, 10 F. (2d) 143, (C. C. A. 5th Circuit); *Mack v. Connecticut General Life Ins. Co., of Hartford*, 12 F. (2d) 416 (C. C. A. 8th Circuit).

Circumstances may be such that a provision for incontestability may prevail over an express provision declaring risk of suicide is not assumed. In the case of *Mareck v. Mutual Reserve Fund Life Assn.*, 62 Minn. 39, the syllabus states the facts and conclusions of the court:

"The defendant issued to B a life insurance policy for $5,000 payable at his death to his personal representatives. One clause on the printed policy provided that: Death of the member by his own hand, whether voluntary or involuntary, sane or insane, is not a risk assumed by the association in this contract; but in every such case there shall be payable, subject to all the conditions of this contract, a sum equal to the amount of the assessments paid by said member, with six per cent interest; but the board of directors or the

Myers v. Liberty Life Ins. Co.

executive committee may, in writing, waive this condition. Written in ink across the face of the policy, and forming a part of it, was the following: After five years from the date of this certificate it is incontestable for any cause except nonpayment of dues or mortuary assessment, the age of the applicant being correctly stated in the application for the certificate. The age of the insured was correctly stated in his application, and all dues and mortuary assessments were duly paid up to the time of his death. More than five years after the date of the certificate the insured came to his death by his own hand. *Held,* that the 'incontestable clause' applied, and that the company was liable for the full sum of $5,000."

The case was well decided. It did not decide that a contestable clause in an insurance policy nullifies a clause providing that risk of suicide is not assumed; it merely decided that, under the circumstances stated, the incontestable clause in the policy under consideration applied, and the company was liable for the face amount of the policy. The case is frequently cited as establishing a principle of universal application.

If it be suggested the word "incontestable" has been considered from a lawyer's and not from a layman's standpoint, let it be conceded the company is contesting the policy. In that event the policy contains two time limitations with respect to contest. One is general. The other relates to a specific subject, and so constitutes an exception to the general provision. The incontestable provision did not cover the entire subject dealt with by the suicide provision. The suicide provision was not directed against development of suicidal tendency which might constitute ground for action to avoid or reduce liability. It was directed against suicide, which is death by voluntary act. It was directed against suicide occurring within two years from date of policy, and the incontestable provision could not by any possibility apply to suicide occurring more than one year and less than two years from date of policy. There is no basis for distinguishing between suicide occurring eleven months and suicide occurring twenty-three months from date of policy, and the result is the two provisions relate to different grounds of contest. There is no conflict between them, and each one may be given full effect.

Plaintiff contends the court is committed to the view that an incontestable provision overrides a suicide provision by the decision in the case of *Court of Honor v. Updegraff,* 68 Kan. 474, 75 Pac. 477. The syllabus reads as follows:

"A life insurance policy provided that it should be incontestable after two years from its date. The insured who held the policy, which was payable to his wife, committed suicide after the two-year period had elapsed. *Held,* that the beneficiary was entitled to recover the amount."

It will be observed the syllabus makes no mention of a suicide provision. The statement of facts discloses there was a provision in the contract excluding risk of suicide; but the statement of the question to be decided disregarded the suicide provision, and took into account fact of suicide only, and not contract relating to suicide:

"The sole question involved is whether the provision in the benefit certificate which rendered it incontestable after two years was void when it appeared that the insured took his own life." (p. 475.)

Counsel for appellant contended for the broad doctrine of the decision in *Ritter v. Mutual Life Insurance Co.,* 169 U. S. 139 (since modified: see *Northwestern Life Ins. Co. v. Johnson,* 254 U. S. 96), holding in effect that public policy requires that self-destruction of the insured shall avoid a policy on his life. The decision of the court was against that contention. Nothing else was decided, and the authorities cited in the opinion were referred to for the purpose of sustaining the decision, and not for the purpose of taking a position regarding the effect of an incontestable provision on a suicide provision.

In the case of *Maccabees v. Nelson,* 77 Kan. 629, 95 Pac. 1052, the certificate holder cited the Updegraff case in support of the proposition that the fraternal order issuing the certificate could not by a by-law decrease the endowment to be paid on death of the member by suicide. The Updegraff case did not bear even remotely upon that proposition, but in distinguishing the case the writer of the opinion undertook to tell what was decided:

"The decision in that case was, in effect, the determination of which of two conflicting constitutional provisions should govern; that is, whether the provision which rendered the certificate incontestable after two years was rendered inoperative by another provision relating to suicide. The court decided that the provision rendering the certificate incontestable after two years governed, and upheld the claim of the beneficiary." (p. 635.)

The statement reveals a total misconception of the decision in the Updegraff case, and is incorrect. All that was involved in the Maccabees case was the question of power to change by-laws relating to liability in case of death by suicide, and the court properly

sustained the change. The certificate did not contain an incontestable clause, the subject of conflict between incontestable and suicide clauses was not involved, and the erroneous statement did not commit the court to any view on the subject.

Plaintiff contends the agreed facts did not show the insured had sufficient mental capacity to be conscious of the effect of his act in taking his own life. In the case of *Hart v. Modern Woodmen,* 60 Kan. 678, 57 Pac. 936, the syllabus reads:

"It is competent for parties in contracting as to life insurance to provide that self-destruction by the insured, whether sane or insane, shall avoid the contract. Such a provision covers a case of intentional self-destruction by one who understood the physical nature and consequences of the act which caused his death, although his mind was so far impaired that he was not conscious of the moral quality or consequences of such act."

In that case the agreed facts were that the insured shot and killed his wife, and then shot and killed himself while he was insane and his reasoning faculties were so impaired he was unable to understand the moral quality of his act. In the opinion it was said the agreed facts showed intentional self-destruction, and that while the insured did not understand the moral character of his acts he understood what their physical end and consequence would be. In this instance the word "suicide" in the agreed facts means the same as the word "suicide" in the policy, the insured is presumed to have been sane, and if an insane man knows what it means to shoot himself, a sane man knows what it means to hang himself.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for plaintiff for the amount of premium actually paid.