No. 30,275.

Roy O. Moore, Francis A. Moore and Mildred M. Dorsey, only
Legal Heirs at Law of Laura E. Moore, Deceased, *Appellants,* v.
The American Insurance Union, *Appellee.*

(10 P. 2d 1084.)

Opinion filed May 7, 1932.

*M. B. Munson* and *F. B. Wheeler,* both of Pittsburg, for the appellants.

*A. B. Keller, Geo. R. Malcolm* and *C. A. Burnett,* all of Pittsburg, for the
appellee.

The opinion of the court was delivered by

Johnston, C. J.: This action was brought by plaintiffs, the chil-
dren of Laura E. Moore, to recover upon a certificate of insurance
issued by the American Insurance Union, a fraternal insurance
society. They were defeated and have appealed.

Laura E. Moore became a member of the society on December
19, 1917, and there was then issued to her a certificate of insurance
for $1,000 in which her husband, Levi L. Moore, was named as bene-
ficiary. She paid all dues and demands made upon her by the
society and complied with all the provisions of her contract until her
death on March 22, 1929. She was shot and killed by her husband,
the beneficiary in the insurance contract. He pleaded guilty to a
charge of murder in the first degree and was sentenced to incarcera-
tion in the penitentiary. It is agreed by the parties that he killed
his wife intentionally and feloniously, but not with the intention of
obtaining insurance or pecuniary profit thereby. It is conceded that
he could not inherit from the wife he murdered and therefore the
plaintiffs, the children of Laura E. Moore, are her only surviving
heirs. When Laura E. Moore became a member of the society and

obtained the contract of insurance, there was in effect a law of the society which provided in terms that the death of a member by the hands of a beneficiary was a risk not assumed by the society and that no benefits of such would be paid under the certificate unless the beneficiary should prove to the satisfaction of the directors that the deed was not committed intentionally and with a desire to profit thereby. After Laura E. Moore became a member and before her death the law was changed relating to the death of a member by a beneficiary, but it still retained the provision that the death of a member by the hands of a beneficiary was not a risk assumed by the society. The amendment added to the provision that where there was more than one beneficiary and the death was caused by only one of them, it would not deprive the other innocent beneficiaries of their rights to their respective shares under the certificate. The certificate contained many provisions, among which was the exercise of options for limited payments under prescribed conditions, that a certain proportion of the insurance should be paid if death occurred within one year after the date of the certificate, and a certain other proportion in the event of death within two years. The following clause was then added:

"After two years from the date hereof, this certificate shall be paid in full and be incontestable except for felony or breach of warranty."

The case was submitted upon agreed statements of fact from which the foregoing is derived, and on the agreed facts it was adjudged that there was no liability of defendant to plaintiffs under the insurance contract. The effect of what is spoken of as the incontestable clause of the contract is the principal subject of controversy between the parties, and the plaintiffs urge that this is a case of defendant contesting that which is incontestable.

Defendant on its part is insisting that the killing of a member by the hands of a beneficiary was a risk not assumed by it and was expressly excluded from the conditions and coverage of the insurance contract. The provision as to the risks assumed and in force when the insured became a member of the union was:

"Death by hands of beneficiary. The death of a member by the hands of the beneficiary is a risk not assumed by this association, and no benefits shall be paid under any certificates in the life or health and accident departments to any such beneficiary, unless said beneficiary proves to the satisfaction of the board of directors that the deed was not committed intentionally and with the desire to profit thereby."

In the amendment of this provision made before the insured was murdered by her husband, the beneficiary, it was changed to say:

"Death by hands of beneficiary. The death of a member by the hands of the beneficiary is a risk not assumed by the society, and no benefits shall be paid under any certificate in the life or health and accident divisions to any such beneficiary, or to any other person or persons. Should there be more than one beneficiary, the death of the member at the hands of one beneficiary shall not deprive the other beneficiaries of their rights to their respective shares designated in the certificates."

It will be observed that in both the original and amended provisions it is recited that the death of a member at the hands of a beneficiary is a risk not assumed by the association. The exclusion of this risk from the contract was a matter which the member and the association had a right to make. It involved not only the protection, stability and life of the association, but also the protection of the life of the member, and was manifestly in furtherance of a good public policy. In the original provision making the exclusion they added a clause to explain that a death caused accidentally and innocently would not deprive the beneficiary of benefits under the contract, if he could prove to the satisfaction of the directors that it was not intentionally done and also that it was not done for pecuniary profit. In the amendatory provision the privilege of appealing to and satisfying the directors that the killing was innocently done was omitted, and in its place the clause was inserted that if there were two or more beneficiaries, one of whom killed the member, the other innocent beneficiaries would not be deprived of their share of the benefits.

It was competent for the association to make the amendment, and the insured in her application, which was a part of the contract, had covenanted and warranted that she would conform with the laws of the association then in force or which might thereafter be in force. This agreement was binding on her alike with other members, and the obligations under the contract must be determined by the amended law in force when the death occurred. It has been decided and is not now open to contention that such an amendment is reasonable and valid and therefore binding upon members. (*Dey v. Knights & Ladies of Security,* 113 Kan. 86, 213 Pac. 1066; *Roper v. Columbian Circle,* 113 Kan. 280, 214 Pac. 421; *Guy v. Modern Woodmen,* 128 Kan. 745, 280 Pac. 756.)

It is contended and ingeniously argued that the incontestable

clause must prevail over the provision with reference to the killing of a member by a beneficiary and that the insurer is not permitted to contest the insurance for any reason other than those excepted in the incontestable clause, which were felony or breach of warranty. Of course, the incontestable clause precludes a contest after the specified period of broken conditions of the policy, something to be performed by the insured, but how can it be said that the association is precluded from contesting an asserted obligation which it never assumed and which it expressly excluded from the contract? It was not an obligation or part of the contract. It amounted to a statement or agreement of the parties that the risk named was not to be regarded as the subject of the insurance contract. The incontestable clause did apply to mutual obligations assumed and included in the contract, but cannot apply to those which the parties agreed were not assumed and which the governing law of the association provided could not be assumed. Plaintiffs cite and rely on *Court of Honor v. Updegraff*, 68 Kan. 474, 75 Pac. 477, as a case where the insured came to his death by suicide, and there is some general language in the opinion that probably gave plaintiffs some encouragement and ground to refer to it, but it is not an authority in support of plaintiffs' contention in this case as was demonstrated in the later case of *Myers v. Liberty Life Ins. Co.*, 124 Kan. 191, 257 Pac. 933. There the opinion in the Updegraff case was interpreted, and it was shown that the question as to the effect of an incontestable clause such as was in the Myers case, and which we have here, was not involved and determined in the Updegraff case. In the Myers case the court recognized that there was a difference of judicial opinion on the subject and some of the cases cited by plaintiff were considered, distinguished or held to be unsound, but there can be no doubt that this court has adopted a view contrary to the plaintiff's contention. On the question whether the incontestable clause conflicted with and prevailed over the one relating to a risk not assumed, it was said:

"What the company was trying to guard against was insurance taken out by a person who intended to resort to suicide as a means of recouping or swelling his estate, or of providing for or enriching some beneficiary or beneficiaries. Experience shows that this is done often enough to warrant declination of the risk. Such being the purpose of the suicide provision, there is no necessary conflict between it and the incontestable provision. In strictness they relate to different subjects. One relates to engaging quality of the contract, and the other to definition of risk. Observing the distinction, at the

end of a year the company was bound to the full extent of the risk it assumed, but it was not liable on a risk which it stipulated it would not assume, and the defense that the assured committed suicide no more contested the policy than a defense that he is still alive." (p. 196.)

The Myers decision is controlling in the instant case and also finds support in other jurisdictions.

In *Metropolitan Life Ins. Co. v. Conway*, 252 N. Y. 449, 452, there was a provision that death resulting from flight in aircraft was a risk not assumed by the insurance company, and it was contended that the provision conflicted with the incontestable provision of the policy, but the court held that the provision was not inconsistent with other conditions in the policy but was a restriction as to coverage, and that where there had been no assumption of the risk there can be no liability. In the opinion rendered by Judge Cardozo, then chief justice of the court of appeals, he said:

"The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage, the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken. Like questions have arisen in other jurisdictions and in other courts of this state. There has been general concurrence with reference to the answer." (Citing a number of cases.)

Of the principles involved it has been said:

"By the use of the term 'incontestable' the parties must necessarily mean that the provisions of the policy will not be contested, and not that the insurance company agrees to waive the right to defend itself against a risk which it never contracted to assume." (*Scarborough v. Insurance Co.*, 171 N. C. 353, 355.)

See, also, *Jolley v. Insurance Co.*, 199 N. C. 269; *Woodbery v. New York Life Ins. Co.*, 221 N. Y. S. 357; *Wright v. Philadelphia Ins. Co.*, 25 F. 2d 514; *Hearin v. Standard Life Ins. Co.*, 8 F. 2d 202, and other authorities referred to in the cases we have cited.

We have examined the contentions of plaintiffs and the authorities they have presented, but find no error in the judgment, and it is therefore affirmed.