No. 33,871

CHARLES D. NORRIS, *Appellee*, v. THE TRAVELERS INSURANCE COMPANY, *Appellant*.

(79 P. 2d 842)

Opinion filed June 11, 1938.

*C. H. Brooks, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe, Wayne Coulson* and *Paul R. Kitch,* all of Wichita, for the appellant.

*Austin M. Cowan, C. A. McCorkle, W. A. Kahrs, Robert H. Nelson* and *Henry L. Butler,* all of Wichita, for the appellee.

The opinion of the court was delivered by

·HUTCHISON, J.: This was an action to recover benefits for per-

manent total disability under the provisions of a life insurance policy, a copy of which was attached to the petition as an exhibit, it being what is called a converted policy because it automatically succeeded a five-year term policy, the provisions of both policies being nearly the same.

The defendant insurance company appeals from an order of the trial court striking from its answer the following defense:

". . . said disability commenced prior to December 8, 1927, at which time defendant's policy of insurance attached hereto as exhibit 'A' and its successor, policy No. 1736196, became effective, and has been continuous since prior to said date."

No question is raised as to this being an appealable order, both parties evidently so concluding under such rulings as were made in the following Kansas cases: *Norman v. Railway Co.*, 101 Kan. 678, 168 Pac. 830; *Van Deren v. Heineke & Co.*, 122 Kan. 215, 252 Pac. 459; and *McKenzie v. Ruggles Construction Co.*, 129 Kan. 759, 284 Pac. 407.

The appellant expresses the question involved in this appeal in the following terms:

"Is a provision in a clause of a life insurance contract providing for the periodical payment of specified benefits for permanent total disability that such disability must have commenced subsequent to the payment of the first premium under the policy, in conflict with the one-year incontestable clause?"

The appellee supports the ruling of the trial court by argument under the following headings:

"The defendant is estopped to claim that the total and permanent disability of the plaintiff was not covered by the policy.

"By the issuance of the second policy the defendant waived the defense now made.

"The incontestability clause prevents defendant from raising the question here involved."

The first policy issued by defendant to plaintiff, No. 1381683, became effective December 8, 1927. It was called a term policy because it was subject to automatic renewal at the end of five years. The second policy, No. 1736196, called a converted policy, was issued and became effective December 8, 1932. Both policies contained the same provisions concerning permanent total disability. The plaintiff attached to his petition, filed June 5, 1937, a copy of the second policy, and the defendant attached to its answer a copy of the first policy. There was no new application for the second policy.

Appellant calls our attention to the use of the following words in the disability clause of the first policy which do not appear in the second policy, viz., "since the payment of the initial premium upon this contract," and argues therefrom the force and effect of the defense which was stricken out, to the effect that the disability in this case commenced before the first policy became effective. Of course the first policy containing those specific words about becoming wholly disabled "since the payment of the initial premium" limited the policy to subsequent disabilities, but why did the defendant company eliminate that clause from the second policy? The disability clause in the second policy is as follows:

"Upon due proof that before a default in the payment of any premium upon this contract . . . the company will pay . . ."

After a contract has been in force for five years it would not be usual to refer back that long to fix the liability after the payment of the initial premium, but to refer, as the company here did, to the disability being before a default in the payment of a premium.

The allegations of the petition are that long prior to the issuance of the second policy the plaintiff was totally and permanently disabled and made proof thereof to the defendant before default in the payment of any premium, and that the defendant accepted the proof and paid the plaintiff $50 per month under the terms of the second policy and its predecessor until September 5, 1936, at which time the defendant failed and refused to make further payments and has made none on said policy since September 5, 1936.

Another difference in the wording of the two policies is in the incontestable clauses thereof. The language in the second policy, the one on which this action is based, is as follows: "This contract shall be incontestable from its date of execution except for nonpayment of premiums." In the original policy the language is as follows: "This contract shall be incontestable after it shall have been in force for a period of one year from its date of execution except for nonpayment of premiums . . ." The difference was that the first policy was incontestable after one year from its execution, while the second, the automatic conversion policy issued five years later, to take the place of the original policy, was incontestable after its execution.

Appellant very properly asserts that insurance policies do not apply to acts which have already occurred, but they are contracts based upon some contingency or act to occur in the future, quoting such language in substance from the case of *Clardy v. Grand Lodge*

*of Oklahoma, A. O. U. W.,* 132 Okla. 165, 269 Pac. 1065. With this view of the general nature, intention and purpose of insurance no one will disagree if it stands alone in the insurance contract. The purpose of obtaining the policy is to be insured against something which may occur in the future. But an insurance contract, like most written contracts, must be considered from its four corners, and that includes other provisions therein and possible restrictions or limitations, among which may be the incontestable provision.

Appellant calls attention to the conversion clause contained in the first policy, under which the insured could have compelled the issuance of a converted policy at the end of the five-year term policy and that without evidence of insurability, and reasons therefrom that the converted policy is but a continuation of the first policy, with the same restrictions and limitations, citing the cases of *Aetna Life Ins. Co. v. Dunken,* 266 U. S. 389, 45 S. Ct. 129, 69 L. Ed. 342, and *Silliman v. Ins. Co.,* 131 Tenn. 303, 174 S. W. 1131. In the first case it was held that the conversion clause made the second policy simply a continuation of the term policy and limited to the provisions and restrictions of the original policy. However, the contention in the case arose over a difference in the laws of the states where the insured was residing at the two different periods, the first policy being delivered to the insured when he was a resident of Tennessee and the converted policy executed and delivered to him when he resided in Texas, and the court held that the Texas laws and requirements should not control or be applicable as to interest and attorney fees, but the rights of the parties should be limited and controlled by the laws of Tennessee. The second case was one where the suicide clause was involved. The converted policy was issued four years later than the term policy, and the suicide occurred six months after the date of the second policy. In the term policy the company limited its liability to the amount of the premiums paid on the policy "in case of suicide committed while sane or insane within one year of the date hereof," but the converted policy provided that in case of suicide "within one year from the date on which this insurance begins." The court considered the language used in the two different policies and held that the two policies were in effect one and the same contract, and that the insurance began, within the meaning of the suicide clause in the second policy, at the time of the issuance of the original policy. The specific language used certainly justified the ruling that it related back to the begin-

ning of the contract relationship. Both of these decisions were based upon special features rather than on a general principle, to the effect that a converted or substituted policy must relate back in all its features to the time and to the provisions of the term or original policy.

We are of the opinion that the change of language in the new policy and the elimination of certain provisions contained in the original policy must be regarded as having been made intentionally and a meaning must be given to the language contained in the new policy. The insurer made these changes, and it alone is responsible for the modifications so made, and we can see no good reason existing why the language of the new or substituted contract should be ignored and that of the original held to be controlling where there is a difference.

In 13 C. J. 595 it is said concerning contracts in general:

"An agreement, when changed by the mutual consent of the parties, becomes a new agreement, which takes the place of the old, and consists of the new terms and as much of the old agreement as the parties have agreed shall remain unchanged . . ."

Reference is made in the converted policy to its being made to take the place of the old, but nowhere does it adopt the provisions of the original policy.

In 6 Couch, Cyclopedia of Insurance Law, 4653, it is said:

"If a term policy stipulates for renewal upon its expiration, and also that it may be exchanged for a new policy without a medical examination, and insured makes an application for a 'new contract or policy,' which is issued, and is not a restatement of the contents of the term policy, but in its terms differs essentially therefrom, and expresses no dependence on the term policy, or connection therewith, said new policy is an independent contract. . . ."

In the recent decision by the circuit court of appeals, tenth circuit, in the case of *Nielsen v. General American Life Ins. Co.*, 89 F. 2d 90, handed down March 24, 1937, it was held:

"Where original life policy gave insured right to exchange it for any other nonparticipating policy used by insurer at time original policy was issued, and provided that new policy should bear same date and be written at same age as the original, but at insured's request new policy was issued at insured's attained age so as to permit correct increased rate of premium, payment of existing loan, and release of entire cash value in excess of loan, new policy, which was not one issued by insurer at time original policy was issued, constituted separate and distinct contract." (Headnote, ¶ 1.)

There is no element of fraud involved in this review, which is limited to the matter of striking out the part of paragraph seven of

the answer that alleged a different time of the beginning of the disability, which if established, would not come within the disability provisions of the original policy and would not in any way concern the disability provision of the converted or new policy which by its express terms must occur "before a default in the payment of any premium upon this contract." We think the language of the new or converted policy is controlling rather than any disability provision contained in the original and omitted from the new policy, and that this alone will justify and affirm the ruling of the trial court in striking out the last part of paragraph seven of the answer.

Both parties have carefully briefed this case also as to the effect of the incontestable provisions in both policies. In the original, or term policy, it was stated to be incontestable after being in force for one year from the date of its execution; the converted or second policy provided that it would be incontestable from its date of execution. Appellant cites two Kansas cases, *Myers v. Liberty Life Ins. Co.*, 124 Kan. 191, 257 Pac. 933, and *Moore v. American Insurance Union*, 135 Kan. 311, 10 P. 2d 1084. The first one was a suicide case, where the policy provided that there should be no liability for death by suicide within two years from date of policy, and also had an incontestable provision covering one year only. The suicide occurred after one year, but before the end of the second year, and the court held that the two provisions were separate and each entitled to full consideration, and that the exemption of the company from liability under the suicide provision was not cut off or limited by the incontestable provision, and held further that the claim of the company under the suicide clause was not a contest, but simply a claim of limited liability. The last Kansas case above cited was where the insured was killed by the beneficiary and there was a special provision in the policy that such a risk was not assumed by the company, and the court held:

". . . that the incontestable clause does not prevent the insurer from contesting liability for death at the hands of the beneficiary, a risk expressly excepted from the insurance contract." (Syl.)

In that case the decision referred to the matter involved as a contest, although the incontestable clause was held not to be controlling.

Two other cases are cited by appellant, both concerning the effect of the incontestable clause upon the disability provision and a claim thereunder. In the case of *Mills v. Insurance Co.*, 210 N. C. 439, 187 S. E. 581, it was held:

". . . The ambiguity created by the conflicting provisions of the policy and the disability rider as to whether the incontestable clause should apply to the disability insurance, must be resolved in favor of the insured." (Syl. ¶ 2.)

". . . The incontestable clause precludes insurer from attacking the validity of the disability insurance on the ground of fraud, but does not preclude insurer from denying the genuineness of the disability claimed or asserting that the alleged disability is not covered by the terms of the policy." (Syl. ¶ 3.)

In the opinion it distinguished between denial of coverage and a defense of invalidity. Another case cited along this line is *John Hancock Mutl. L. Ins. Co. v. Hicks*, 43 Ohio App. 242, 183 N. E. 93, where a similar ruling was made as to the effect of the incontestable clause on the disability provision. In this case last cited the disability clause fixed its application after the payment of the first premium, which is very similar to that provision in the term policy in the case at bar, and it was held that the defendant company had the right, without respect to the incontestable clause, to put the plaintiff upon proof of the commencement of the disability. Many other cases along this line are cited by appellant.

The case of *Kansas City Life Ins. Co. v. Hislip*, 154 Okla. 42, 6 P. 2d 678, decided by the supreme court of Oklahoma in 1932, was one very similar to the case at bar, and it was there held:

"The language admits of no reasonable construction other than the company reserves to itself the right to ascertain all the matter and facts material to its risk and the validity of its contract for one year; and that if within that time it does not ascertain all the facts, and does not cancel and rescind the contract, it may not do so afterwards upon any ground then in existence." (Syl. ¶ 5.)

In the case of *Coodley v. New York Life Ins. Co.*, 9 Cal. (2d) 269, 70 P. 2d 602, decided by the supreme court of California in August, 1937, it was held:

"The provision in a life insurance policy, to the effect that after being in force a specified time it shall be incontestable, precludes any defense after the stipulated period on account of false statements warranted to be true, even though such statements were fraudently made, unless by the terms of the policy fraud is expressed or impliedly excepted from the effect of such provision." (Syl. ¶ 1.)

Many cases are cited in the opinion to show the conflicting views as to the extent of modification or control of the incontestable provision over the disability clause in life insurance policies.

In the recent case of *Stroehmann v. Mutual Life Co.*, 300 U. S. 435, 57 S. Ct. 607, 81 L. Ed. 732, the supreme court of the United

States affirmed the ruling of the district court, holding "that as more than a year had elapsed since the policy took effect the limitation was applicable and controlling." The opinion shows that no exception to the incontestable clause was used, as could have been used, to exclude the disability feature of the policy from its limitation, and that the insured is entitled to any such omission or resulting doubt.

The recent decision by the United States supreme court in the case of *United States v. Patryas*, 58 S. Ct. 551, 82 L. Ed. 585, was concerning a war risk insurance policy and a reinstatement thereof by act of congress as a converted policy, and involved the force and effect of the incontestable clause in relating to the disability clause, and it was said in the opinion:

"This converted policy of insurance provided protection against loss from two causes: namely, death and total permanent disability. A provision making a policy 'incontestable' except for certain clearly designated reasons, is wholly meaningless and ineffective if, after proof of the loss insured against, the policy can be contested upon grounds wholly different from those set out in the exception. The object of the provision is to assure the insured that payment on his policy will not be delayed by contests and lawsuits on grounds not saved by the exceptions. Here, it has been established that the veteran is totally and permanently disabled. Yet his policy is contested on the ground that it does not insure against this disability because it existed before the policy was issued. If this defense can be interposed, his policy has never actually protected him against total permanent disability. Since permanent total disability is one of the two risks insured against in the policy, any contest (not based on the exceptions) which may prevent the policyholder's recovery for such admitted total permanent disability—existing while the policy is in force—is a 'contest' forbidden by the 'incontestable' provision." (p. 587.)

These opinions, said to be conflicting, are not particularly so when applied to limitations of the incontestable clause over disability clauses. A defense against a disability claim is generally a contest. It is not like the suicide question involved in the Myers (Kansas) case, and if no exception is incorporated in the incontestable clause it will naturally apply to the disability clause. The decision in the case of *Priest v. Kansas City Life Ins. Co.*, 119 Kan. 23, 237 Pac. 938, requires an actual contest to be commenced within the limitation of time in the incontestable clause where such limitation is applicable. But as stated earlier in this opinion, we think the ruling of the trial court was correct as based on the change of language used in the converted policy from that used in the term policy, and was fortified by the application of the incontestable clause to matters concerning the disability clause.

We hold that there was no error in the trial court's striking out the closing portion of paragraph seven of the answer.

The ruling is affirmed.