**Irene E. JARMON**

v.

**AMERICAN HERITAGE LIFE INSUR-
ANCE COMPANY.**

Superior Court of Delaware,
New Castle.

June 23, 1970.

James P. D'Angelo, Wilmington, for plaintiff.

Courtney H. Cummings, Jr., Wilmington, for defendant.

OPINION

CHRISTIE, Judge.

This is an action on an insurance policy issued by defendant American Heritage Life Insurance Company to the insured, George S. Jarmon, plaintiff's husband. Plaintiff has alleged, and it is undisputed, that on February 8, 1966, defendant issued a group policy to Canada Dry Bottling Company of Wilmington and a certificate of insurance thereunder to insured, then one of its employees, with plaintiff as a named beneficiary, wherein defendant agreed, inter alia, to pay plaintiff $5,000.00 in the event of the death of insured.

The insured's employment with Canada Dry Bottling Company of Wilmington ended on June 14, 1968, and thereafter, the insured was issued an ordinary whole life insurance policy under the conversion privileges of the group policy and paid a premium thereon in the amount of $263.65.

The insured died on October 12, 1968; and thereafter plaintiff, as beneficiary under the policy, submitted a proof of loss to defendant indicating that the insured was a "victim of suicide—22 caliber rifle". The deposition of the State Medical Examiner, Dr. Ali Z. Hameli, also indicates that the cause of death was suicide and the insured left a suicide note.

Defendant denied plaintiff's claim on the ground that one of the clauses in the ordinary whole life insurance policy bars a claim if the death is caused by suicide which occurs within two years of the date of issuance of the policy.

Plaintiff brought suit on the policy and defendant has moved for summary judgment based on the undisputed facts.

The records reveal that the insured died about two years and nine months after the

group policy was issued but less than three months after the ordinary whole life policy had become effective.

If the provisions as to suicide in the group policy were the same as those in the ordinary life policy and if the policies were were regarded as one for purposes of computing the time lapse under the suicide clause, then plaintiff would be entitled to recover for her husband's death.

Such is not the case here. The group policy did not contain any suicide clause applicable to its basic life insurance coverage. The only reference to suicide in the group policy was as to extra benefits available for accidental death or dismemberment. It is clear then that while the group policy was applicable, the insured's life was protected without time limitation against suicide.

When the insured left the employment of Canada Dry, he sought and obtained a new policy of ordinary whole life insurance as he was permitted to do under the terms of the group policy. The new policy contained the following provision as to suicide:

"SUICIDE. If the insured, whether sane or insane, shall die by suicide within two years after the Date of Policy, the liability of the Company under this Policy shall be limited to the premiums paid hereon."

Plaintiff claims that the suicide occurred more than two years after the date of the policy within the meaning of the suicide clause since the policy in effect at the time of death had been issued pursuant to the terms of the earlier group policy and was, plaintiff says, a continuation of the group policy at least for purposes of interpretation of the suicide clause.

Plaintiff's contention appears at first glance to find support in the case of Baugh v. Metropolitan Life Ins. Co., 173 Tenn. 352, 117 S.W.2d 742 (1938). In that case recovery for a death caused by suicide was not deemed to be barred by a time limit contained in an ordinary life policy because

such policy had been issued to take the place of a long standing group policy containing a somewhat similar suicide time limit. In effect the two policies were considered as if they were one policy for the application of the clause barring recovery for suicide if it occurred within "one year from the date of issue". See also Aetna Life Ins. Co. v. Dunken, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342 (1924).

The case at bar is clearly distinguishable from the cases upon which plaintiff relies because in the case at bar the ordinary life policy contained numerous provisions which differed from the group policy. The most notable difference has already been mentioned: the group policy did not contain any limitation as to its basic life insurance coverage of death caused by suicide whereas the ordinary life policy contained a clear two year limitation. Thus, it cannot be said here that the provisions of the prior policy simply carried over. Instead, the insurance company imposed a new limitation which did not exist in the group policy. It clearly had a right to do this.

Many other differences between the two policies are noted. Among them are the following:

1. The group policy was for Canada Dry Bottling Company employees only. The ordinary life policy was a type available to the public in general.

2. The ordinary life policy was issued pursuant to a clause in the group policy which entitled the insured to convert to an individual policy "in any one of the forms then customarily issued—". This clearly indicated that the new policy was subject to provisions contained in the customary form and not in the group policy.

3. The premium for the ordinary life policy was by contract "the premium applicable to the class of the risk to which the Insured Person belongs—at the date of issue—" and not the group rate.

4. The group policy contained provisions for additional compensation for ac-

cidental death and for dismemberment. The ordinary life policy had no such provisions.

5. The group policy had no provisions for accrual of a cash value. The ordinary life policy did have such provisions.

6. There were no options in the group policy for loans, paid up policies or taking an extended life insurance plan. The ordinary life policy had provisions for all of these.

It is also noted that the ordinary life policy had a specific provision that "The Policy Date is the date on which the first premium is due——", and the suicide clause made specific reference to the date of policy. The first premium applicable to that policy was paid only about three months before the suicide.

It is clear that the particular ordinary life policy here involved was issued without proof of insurability pursuant to a contract contained in the prior group policy but was in no way an extension of the group policy.

The correct rule as it applies to the case at bar is contained in Couch on Insurance, Second Edition, Section 82:29 at page 995:

"A group life policy which provides that when an employee terminates employment, he may have a life policy issued, and that such policy shall be a conversion of the insurance under the group policy and shall terminate the insurance under the group policy, does not form a single contract with the life policy, which provides that the policy constitutes the entire contract between the parties, nor is the life policy a continuation of the group policy."

See also: 43 Am.Jur.2d, Insurance, § 1203, and cases collected in 110 A.L.R. 1139.

Defendant's motion for summary judgment is granted and the case is dismissed.

It is so ordered.