**Allen GOLDWATER, Plaintiff,**

v.

**JACKSON NATIONAL LIFE INSURANCE COMPANY, Defendant.**

**No. C–82–0104–WWS.**

United States District Court, N.D. California.

Feb. 8, 1983.

Jerome N. Field, Keith W. Lewis, Jerome N. Field, Inc., San Francisco, Cal., for plaintiff.

Peter E. Romo, Jr., Harriet M. Rolnick, Adams, Duque & Hazeltine, San Francisco, Cal., for defendant.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

The plaintiff in this case seeks a determination of his rights under a contract of insurance with the defendant. The matter is before the Court on cross-motions for summary judgment. The parties agree that no triable issues remain and that a final decision may be rendered on the record before the Court.

Dr. Goldwater purchased a policy of term life insurance from Jackson National on May 7, 1976. The policy included a rider waiving premiums in the event of total disability, and it provided that "the Owner may, upon written request to the Company at the Home office, convert this Policy to any life or endowment Policy for the amount of insurance then in effect *without evidence of insurability*" (emphasis added).

In 1977 Dr. Goldwater was diagnosed as having Parkinson's disease. He resigned from several staff positions in 1978 and in April, 1980. On April 23, 1980, Dr. Goldwater executed a request to convert his term policy to an endowment policy with a waiver of premium rider. Under the conversion section of the original policy, plaintiff could choose either of two dates of issue for the new policy:

(1) The new Policy will be issued as of the original Policy Date specified in this Policy on any Renewal Date. The new policy premium will be based on the premium rate for the original entry age in accordance with the premium schedules and policy forms in use on the original Policy Date. There must be paid by the Owner, in addition to the premiums becoming due under the new Policy, a sum equal to the difference between the total premiums paid on this Policy to the date of conversion and the total premiums for the same period required on the new Policy with compound interest at six per cent per annum.

(2) The new Policy will be issued as of the current Policy Date of conversion. The new policy premium will be based on the premium rate for the attained age in accordance with the premium rate for the atained age in accordance with the premium schedules and policy forms in use on the date of conversion. The full reserve upon this Policy shall be applied in the reduction of the payments on the new Policy.

Dr. Goldwater chose the conversion date as the date of issue (May 7, 1980). He understood that the only consequence of choosing the earlier date and paying the additional lump sum premium as required by subsection (1), above, would be to give him a lower monthly premium and to give the policy an immediate cash value.

Attached to the endowment policy when it was issued was an endorsement which provided that "the incontestable and suicide provisions of this policy shall run from the date of issue of the original policy from which the attached policy has been converted [May 7, 1976]." The converted policy was based upon and incorporated Dr. Goldwater's 1976 application, and its general provisions were identical to those of the original policy.

In May, 1980, Dr. Goldwater stopped working. His physician determined that he

was totally disabled as of May 18, 1980. On October 17, 1980, plaintiff filed a proof of loss form claiming benefit of the rider waiving premiums. On March 19, 1981, Jackson National refused to waive premiums, citing the following exclusion from the rider:

RISKS NOT ASSUMED. Agreement to waive premiums under this rider does not cover total disability under the following conditions:

1. if injuries are received or sickness first manifested or if disability begins while the policy is not in force. . . .

The rider to the original policy had contained a virtually identical exclusion.

Defendant asserts that Dr. Goldwater was disabled by his Parkinsonism before May 7, 1980, the conversion date, and is therefore not entitled to the benefit of the waiver of premium rider of the endowment policy. Dr. Goldwater contends that for the purpose of applying the exclusion clause his policy was in force on May 7, *1976,* the issue date of the original policy, long before his Parkinson's disease first manifested itself. In other words, it is his position that the waiver of premium rider of the endowment policy relates back to the date of the original term policy; the second policy was merely a continuation of the first.

The parties have not cited, and the Court has not found, any California case raising similar questions. There is a good deal of venerable authority from other jurisdictions, however. In *Philadelphia Life Ins. Co. v. Erwin,* 165 Va. 469, 182 S.E. 209, 211 (1935), the highest court of Virginia ruled that a converted policy is but a "continuation of the original policy and not a new and separate contract." The original policy in that case, dated January 20, 1927, included a rider which provided that the company would pay the insured $50 a month for total disability beginning after the effective date of the policy. The insured converted ("exchanged") his policy for a new policy in the same amount with a disability rider dated January 20, 1932; this new policy was issued on the basis of the original application. The insured became totally disabled on Oc-

tober 1, 1931. Unless the second rider related back to the date of the first policy, he plainly could not recover under its terms. The court held that the rider did relate back, for three principal reasons: (1) the new policy was based upon the same application and the same medical examination as the original policy; (2) the conversion or "exchange was made in accordance with the original contract"; and (3) "the disability provision in the old policy was similar to that in the new." *Id.* 182 S.E. at 211. *Erwin* is indistinguishable from the instant case in these material respects.

The *Erwin* court relied on *Silliman v. International Life Ins. Co.,* 131 Tenn. 303, 174 S.W. 1131 (1915), which was approved by the Supreme Court of the United States in *Aetna Life Ins. Co. v. Dunken,* 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342 (1924). The plaintiff in *Silliman* converted his original policy of January 12, 1910, without providing any evidence of insurability. The insured chose January 12, 1914, as the date of issue of the new policy; this meant that he, like Dr. Goldwater, would pay higher monthly premiums but would not be required to pay the lump sum that would be due if he chose January 12, 1910, as the issue date. The converted policy, like the original policy, provided that in the event of suicide committed within one year from the date "on which this insurance begins," the limit of the beneficiary's recovery would be premiums paid. On July 1, 1914, within six months of the conversion, the insured committed suicide. The court held that the converted policy related back to 1910, and that plaintiff's recovery was therefore not limited by the suicide clause:

It seems to us quite clear that under the facts stated the new policy was but a continuation of the same insurance contract. It was based upon the old application and the old medical examination, and the new terms were in strict accord with the provisions of the old policy, granting to the insured the right to make just such a selection to take the place of the original form. The same may be said of the higher rate of premiums paid. We are

unable to see how a different result can be based on the circumstance that the premium was fixed at the rate applicable to the age the insured had attained when the new policy was issued ... rather than at the old rate, supplemented by the difference in cash, with 6 per cent added. The two rates meant the same thing to the company, being but different expressions of the same price of insurance, but the choice of either was addressed simply to the convenience of the insured.

174 S.W. at 1132. *See also Aetna Life Ins. Co. v. Dunken, supra,* 266 U.S. at 399, 45 S.Ct. at 132 (law governing original policy governs converted policy issued in a different state because the second policy "was issued in pursuance of, and was dependent for its existence and its terms upon, the express provisions of the contract contained in the first one. By those provisions, upon the simple application of the insured, the new policy must issue."); *Moore v. John Hancock Mutual Life Ins. Co.,* 436 F.2d 823, 830 (5th Cir.1971) (suicide clause relates back: "The ordinary meaning of a right of conversion in an insurance policy is a device by which the rights enjoyed under one kind of policy, such as a group or term policy, may be *continued* in another type of policy at the option of the insured."); *Western & Southern Life Ins. Co. v. Shelby,* 101 Ind. App. 1, 194 N.E. 197 (1935) (en banc). *But see Gans v. Aetna Life Ins. Co. of Hartford,* 214 N.Y. 326, 108 N.E. 443 (1915).

These cases are persuasive; while this is an issue of state law on which the California courts appear not to have spoken, the Court believes that they would follow these cases.

*Gans* is the only case reaching an apparently contrary result. In that case, however, the suicide exclusion clause in the new policy unambiguously was made to run for "one year from *the date hereof.*" Jackson National cites *Norris v. Travelers Ins. Co.,* 148 Kan. 122, 79 P.2d 842 (1938), but in that case the terms of the converted policy were materially different from those of the original policy. The other cases cited by defendant, to the extent they have a bearing,

involved the conversion of group policies to individual policies. *See Binkley v. Manufacturers Life Ins. Co.,* 471 F.2d 889 (10th Cir.), *cert. denied,* 414 U.S. 877, 94 S.Ct. 130, 38 L.Ed.2d 122 (1972); *Jarman v. American Heritage Life Ins. Co.,* 267 A.2d 601 (Del. Super.1970); *Provident Life and Accident Co. v. Kegley,* 199 Va. 273, 99 S.E.2d 601 (1957). Those cases are distinguishable for a variety of reasons: group policies normally do not have a date of issue reflecting the date on which a person joins the insured group and thus becomes eligible for benefits; exchange or conversion requires issuance of a new and different individual policy; and in the cases cited involving suicide, the group policies contained no suicide clause at all.

Dr. Goldwater was fully entitled to a waiver of premiums under the term policy, and he did not lose that right by exercising his right to convert into an endowment policy. It is significant in this connection that under the provisions of the term policy, Dr. Goldwater could not have converted it if he were being paid disability benefits. The original policy thus appears to have contemplated the problem of a conversion motivated by disability, and it dealt with the problem by *denying conversion* in circumstances not present here, rather than by providing that the converted policy should be separate and distinct from the original one for the purpose of determining whether the owner is entitled to a waiver of premiums. On the latter point the contract is mute. It states only that the suicide and incontestability provisions relate back to 1976. By negative implication, this may mean that other provisions of the endowment policy do not relate back. On the other hand, it may represent an acknowledgment on the insurer's part that Dr. Goldwater's eligibility for the benefits he was contracted for should be measured by reference to the date of the original policy; the clause may thus be *incomplete* rather than exclusive. In light of the cases cited above, the policy is at best ambiguous and should therefore be construed against the insurer. *Harris v. Glens Falls Ins. Co.,* 6 Cal.3d 699, 100 Cal.Rptr. 133, 493 P.2d 861 (1972).

There is no dispute that Dr. Goldwater's illness had not manifested itself in 1976. Accordingly, Dr. Goldwater is entitled as a matter of law to a judgment declaring him to be entitled to the benefit of the waiver of premium rider of his endowment policy. No further relief is sought, except that plaintiff shall recover his costs.

IT IS SO ORDERED.